IRVING REINGOLD AND PHILIP STARK, PARTNERS DOING BUSINESS AS REIN MOTORS, PLAINTIFFS-APPEL-LANTS, v. HARRY C. HARPER, COMMISSIONER OF LABOR AND INDUSTRY, DEFENDANT-RESPONDENT.

Argued October 23, 1950—Decided January 8, 1951.

*Mr. Albert S. Gross* argued the cause for appellants.

*Mr. Joseph A. Murphy,* Assistant Deputy Attorney General,. argued the cause for respondent. *Mr. Theodore D. Parsons,.* Attorney General, on the brief.

The opinion of the court was delivered by

HEHER, J. The question here is the constitutional sufficiency of Ch. 274 of the Session Laws of 1949, entitled "An,

Act to regulate the sale and dispensing of gasoline or other inflammable liquid at retail filling and service stations and providing penalties for violations." *P. L., p.* 846; *N. J. S. A.* 34:3A–1 *et seq.* Thereby, it is made unlawful for an owner, operator or employee of an owner or operator of a retail filling or service station of the class described in the title "to permit any purchaser, customer or other person not connected with the ownership or operation of such filling or service station to use or manipulate any pump, hose, pipe or other device for measuring, pumping or dispensing gasoline or other inflammable liquid for the purpose of filling the tank of a motor vehicle, or any barrel, drum, can or other container with gasoline or other inflammable liquid." *Section* 1. And it is ordained that no person shall engage in such operation "unless he shall have received practical instructions in the use and operation of such measuring, pumping and dispensing devices and has had practical experience under the supervision of an experienced operator in their use for a period of not less than one full working day." *Section* 2. Pecuniary penalties are imposed for violations, recoverable by the Commissioner of Labor and Industry. *Section* 3. The point made is that the action thus taken is essentially and unduly prohibitory and not regulatory merely.

On May 28, 1949, when the act by its terms became effective, plaintiffs were the operators of a self-service gasoline filling and service station in Hackensack, New Jersey, where under what is termed "competent supervision" and by means of mechanical devices and safeguards approved by the chief of the local fire department self-service of gasoline for use in automobiles was afforded the consuming public at a price approximately four cents a gallon less than the price prevailing in the area for gasoline of comparable quality. On June 17 ensuing, the complaint herein was filed. It alleges that compliance with the statute would oblige plaintiffs "to assign at least four additional men per day to dispense gasoline, at an added expense to plaintiffs," which would in all likelihood "force them to increase the retail price of gasoline, thus depriving the consuming public of the savings passed on to them

by reason of the customer's self-service system;" that these legislative restrictions are not reasonably related to the public health and safety, but are arbitrary and oppressive and not within the domain of the police power, and so constitute an invasion of the right of private property in contravention of the Fourteenth Amendment of the Federal Constitution and Article I of the State Constitution of 1947. There is a prayer that the statute be adjudged unconstitutional in all its parts and its enforcement by the defendant Commissioner of Labor and Industry enjoined.

By consent, the issue was submitted to the Superior Court "for decision and judgment on the pleadings and matters contained in the appendix" to defendant's brief filed in that court, consisting of the minutes of a hearing on the measure (then known as Senate Bill No. 245) before the Senate Committee on Public Health on March 31, 1949, which are included in plaintiff's appendix herein.

Regulations of the local fire department provide for (1) "no smoking" signs; (2) signs directing that the motor be shut off during the filling operation; (3) fire extinguishers at all "islands"; (4) safety nozzles; and (5) one attendant "assigned to duty on each island of two pumps." The use of "coin operated or automatic gasoline vending or dispensing machines" is forbidden. And it is also provided that "no gasoline be served by minors or persons who appear to be, in the slightest, inebriated."

Trade in gasoline does not hold such a peculiar relation to the public as to be "affected with a public interest" and subject to public regulation for the protection of that interest. Gasoline is one of the ordinary commodities of trade; and traffic in the article is not a business "devoted to a public use and its use thereby in effect granted to the public," but *juris privati* merely. *Williams v. Standard Oil Co.,* 278 *U. S.* 235, 49 *S. Ct.* 115, 73 *L. Ed.* 287, 63 *A. L. R.* 596 (1928). For legislative price regulation and kindred supervision, public concern for the maintenance of the particular business is not enough; it is requisite that the public have a special and definite interest in the use calling for public regulation to

serve that interest. One's business is not clothed with a public interest unless it bears "such a substantial and definite relation to the public interest as to justify an indulgence of the legal fiction of a grant by the owner to the public of an interest in the use." *Tyson & Bro. v. Banton*, 271 *U. S.* 418, 47 *S. Ct.* 426, 71 *L. Ed.* 718 (1927); *Wolff Packing Co. v. Court of Industrial Relations*, 262 *U. S.* 522, 43 *S. Ct.* 630, 67 *L. Ed.* 1103, 27 *A. L. R.* 1280 (1923).

But the police power also comprehends measures essential to the protection of the public health, safety and welfare. Gasoline is a highly inflammable and explosive substance; and because of the potential hazards to health and safety, the mode and manner of its use are subject to reasonable regulation under this branch of the police power. *Schait v. Senior*, 97 *N. J. L.* 390 (*Sup. Ct.* 1922); *Independent Pennsylvania Oil Co. v. Mayor and Council of Gloucester*, 102 *N. J. L.* 502 (*Sup. Ct.* 1926); *Morgan v. Collingswood*, 104 *N. J. L.* 13 (*Sup. Ct.* 1927). The protection of the public against the unskillful and negligent use of a dangerous instrument or commodity is a familiar exercise of the police power. And it may also be invoked to serve in substantial manner the essential public comfort and convenience. *Bauer v. Board of Fire and Police Commissioners of Paterson*, 102 *N. J. L.* 235 (*Sup. Ct.* 1926).

It is a corollary of these considerations that the regulation of trade in gasoline, serving as it does a public need, shall not go beyond the demands of the public interest which vindicates its exercise, and shall in no sense be arbitrary or capricious, for an exercise of power that exceeds the bounds of reasonable necessity would run afoul of the fundamental common right to engage in a lawful pursuit and of the right of private property secured by the Fifth and Fourteenth Amendments of the Federal Constitution and the provision of the State Constitution cited *supra*. Arbitrary action under the guise of the police power is inadmissible. *Jay Burns Baking Co. v. Bryan*, 264 *U. S.* 504, 44 *S. Ct.* 412, 68 *L. Ed.* 813, 32 *A. L. R.* 661 (1924); *Regal Oil Co. v. State*, 123 *N. J. L.* 456 (*Sup. Ct.* 1939). It is essential that there

be a substantial relation between the regulation and the protection of the common welfare in an area of action within the reach of the police power; and also that the means be reasonable and appropriate to that end.

The police power is exercisable only to serve a basic interest of society; it is not invocable for the economic protection alone of particular individuals or groups of individuals. The relief sought must come within the range of a reasonable requirement for the common good and welfare; and a measure that, in the purported service of that end, goes beyond the public need is not effective to curtail the personal and private property rights secured by the cited constitutional guaranties. If the dominant purpose be the advancement of private interests under the guise of the general welfare, there is a perversion of the power. Police regulation denotes such restraints upon property, trade or business as may be fairly imposed for the good of all. The power may not be exerted to serve private interests in contravention of common rights. *New Jersey Good Humor, Inc., v. Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1940). The statute under review is not sustainable if it is designed merely to outlaw trade practices, procedures and devices that would lower the price of gasoline to the consuming public, for that would constitute restraint of trade in derogation of the general interest.

Price control through the legislative process has long had favor among the operators of gasoline filling stations. *Vide Regal Oil Co. v. State, supra.* The law now before us had such sponsorship before the Legislature, although the advocacy was professed to be grounded in considerations of safety related to the hazards of explosion and fire. This is shown by the minutes of the legislative hearing on the measure, offered by consent to establish the factual background in lieu of proof by depositions. But the factual data do not sustain the tendered hypothesis that the protection of the public health and safety was not the motivation for the eventual legislative action. The factor of operative safety was the subject of inquiry at the hearing; and we must presume that the Legislature functioned wholly within its allotted

sphere. We cannot say, on the showing made, that self-service of this article of commerce is so free of inherent risks to life and property as to render the utter proscription of that means of distribution arbitrary and oppressive and in no sense a service of the general interest which justifies the exertion of the police power. It was fairly within the province of the lawmaking body to determine whether as a practical matter self-service of the commodity in the particular mode is subject to such supervision by attendants as to insure the full public protection necessary to stay the legislative hand in its concern for the common security.

It suffices to say in this regard that, according to expert opinion adduced at the legislative hearing, the difficulty is one of "adequate supervision over the attendants" to insure maintenance of "contact with the customer," which would "require policing." Apart from the hazard of smoking and the use of the apparatus by persons not fully competent, for one reason or another, it was shown at the hearing that the flowing of gasoline in pipes generates electrical charges which are sometimes capable of producing a spark sufficient to ignite a combustible mixture of gasoline vapor and air; that static electricity is also produced when gasoline is poured from one receptacle into another, and when passed through a filter; and that the metal nozzle at the end of the gasoline hose should be held in contact with a metal tank or receptacle which is being filled with gasoline. All this from the *Journal of Industrial and Engineering Chemistry, vol.* 34, 1942, introduced at the hearing as proof of the fact. It is self evident that the flammable nature of gasoline vapor demands every practicable precaution against overflow during the fueling operation and the hazards of negligence and want of skill and understanding in the operative process.

As against the public's interest in price economy, public security against the perils of explosions and fires in the use of gasoline prevails. The choice of policy was the Legislature's.

The range of the State's discretion in promoting the security and well-being of the public "accords with the

subject of its exercise." *Sterling v. Constantin,* 287 *U. S.* 378, 53 *S. Ct.* 190, 77 *L. Ed.* 375 (1932). Where the end is one to which legislative power may properly be directed, it is enough "if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is·an actual relation between the means and the end." *Stephenson v. Binford,* 287 *U. S.* 251, 53 *S. Ct.* 181, 77 *L. Ed.* 288 (1932). The wisdom, expediency or policy of a police regulation does not give rise to a justiciable question if the measure is directed to a matter of public concern within the domain of the police power, and the means are reasonable and appropriate to the end in view. The lawmaking body is the sole judge of what is adequate to meet the particular public requirement; judicial interposition is justifiable only where the action taken is arbitrary. The police power is an attribute of sovereignty to serve all the great public needs; and its exercise does not constitute a denial of due process or the equal protection of the law within the concept of the Fifth and Fourteenth Amendments of the Federal Constitution or the due process clauses of our own Constitution, unless it be palpably unreasonable or unduly discriminatory. It is sufficient if there be a rational connection between the means employed and the end sought. Every reasonable presumption is to be made in favor of the validity of the legislative act. Fairly debatable questions as to need and the propriety of the means employed to meet the exigency are, within the legislative province. When the subject is comprehended in the police power of the State, "debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment." *Sproles v. Binford,* 286 *U. S.* 374, 52 *S. Ct.* 581, 76 *L. Ed.* 1167 (1932).

 Persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state; and, when the power is exerted by the lawmaking body, it is not a judicial function to determine which one of two modes was likely to be the most effective for the protection of the public interest in view. That is a legislative inquiry, to be resolved in the light of

all the information at hand. Judicial interference in this regard would constitute an invasion of the legislative function. Judicial interposition may be had only where there is no real or substantial relation between the legislative act and a valid public interest under the police power or the measure is, beyond all. question, a palpable invasion of rights secured by the organic law. The expediency of the statute is for the lawmaking body alone. *Jacobson v. Massachusetts,* 197 *U. S.* 11, 25 *S. Ct.* 358, 49 *L. Ed.* 643 (1905) ; *Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016 (1926) ; *Standard Oil Co. v. Marysville,* 279 *U. S.* 582, 49 *S. Ct.* 430, 73 *L. Ed.* 856 (1929).

Here, the Legislature has investigated and found the need. It concluded, it is fair to say, that the supervision afforded by "attendants," involving as it does a measure of "policing," would not provide an adequate safeguard against the risk to life and property inherent in flowing gasoline. We cannot adjudge on the case made that the presumption of validity has been overcome and the measure is demonstrated to be arbitrary and capricious. The Legislature had before it a substantial showing of danger in the self-service method ; and the court cannot substitute its own discretion for that of the lawmaking body, even though there be a difference of opinion as to the need and the propriety of the means devised to serve the need. The constitutional function of judicial review does not include supervision of the legislative judgment within the lawmaking body's exclusive field of action. *Abelson's, Inc., v. New Jersey State Board of Optometrists,* 5 *N. J.* 412 (1950). The court is not at liberty to appraise the information available to the legislative department as if that inquiry were a judicial proceeding. It "may not test in the balances of judicial review the weight and sufficiency of the facts to sustain the conclusion of the legislative body," nor may it set aside the act "because compliance with it is burdensome." *Standard Oil Co. v. Marysville, supra.* Prohibition of the self-service device as a means of distribution of this highly flammable commodity is permissible if the Legislature may reasonably conceive that method to be dan-

gerous to the public health and safety. Timely preventive action is of the essence of the police power to protect that interest. Where the mischief is within the range of the police power, the legislative body of necessity has a wide discretion in the choice of means for effective remedial action. Policy is for the judgment of the Legislature. The question here is whether, "considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat." *Purity Extract & Tonic Co. v. Lynch,* 226 *U. S.* 192, 33 *S. Ct.* 44, 57 *L. Ed.* 184 (1912). If in the given circumstances the propriety of the means employed to serve the public health and safety "be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury," or "by the personal opinion of judges, 'upon the issue which the legislature has decided.'" *Hebe Co. v. Shaw,* 248 *U. S.* 297, 39 *S. Ct.* 125, 63 *L. Ed.* 255 (1919).

Factual support for the· legislative judgment is to be presumed. Barring a showing *contra,* the assumption is that the measure rests upon some rational basis within the knowledge and experience of the Legislature. *Metropolitan Casualty Insurance Co. v. Brownell,* 294 *U. S.* 580, 55 *S. Ct.* 538, 79 *L. Ed.* 1070 (1935). While the existence of a rational basis for the legislation may be assailed by proof of facts beyond the sphere of judicial notice, "by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it;" and where there was a fairly arguable question as to the extent of the need, the decision was for the legislative body and "neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it." *United States v. Carolene Products Co.,* 304 *U. S.* 145, 58 *S. Ct.* 778, 82 *L. Ed.* 1234 (1939). As said in that case, such administrative difficulty as there may be is a factor to be considered in determining the need. To the same effect: *South Carolina State Highway Department v. Barnwell,* 303 *U. S.* 177, 58 *S. Ct.* 510, 82 *L. Ed.* 734

(1939). What is needed for effective enforcement of a measure reasonably deemed essential to the public health and safety is a consideration for the lawmaking body. *Euclid v. Ambler Realty Co., supra.*

Tested by these criteria, the measure taken here cannot be deemed arbitrary or capricious. Gasoline is flammable and dangerous in use. It was ever so. The principles of physical science are not variables, changing from time to time. There can be no doubt that self-service of this class augments the hazard attending the handling of gasoline. In reality, the measure is but a regulation of management and conduct to safeguard persons and property against known perils of the business. The Legislature has the function and the responsibility of determining what is needed in the interest of the common safety. The burden of proof of a deviation from its constitutional sphere has not been sustained.

The judgment is affirmed.

WACHENFELD, J. (dissenting). I am in accord with the thought that the sale of gasoline can and should be regulated by the Legislature in the exercise of police power because of its dangerous potentialities.

The difficulty as I see it, however, is created in the instant case because the challenged statute in effect does more than regulate the sale of the commodity; it completely prohibits the suggested method of dispensing it.

"Broad as it is, the police power is not without its limitations. Its exertion must be directed to a legitimate end, *i. e.*, the protection of a basic interest of society rather than the mere advantage of particular individuals * * * And it is requisite that the means employed in its exercise have a rational relation to that end, and be altogether free from arbitrariness. The restraints and regulations imposed for the general good and welfare must needs have the virtue of reasonableness. There cannot be in the name of police regulation, an unreasonable and oppressive curtailment of personal or property rights. A measure that goes fairly beyond the public need designed to be served does not take the category of a valid police regulation." *N. J. Good Humor, Inc., v. Bradley Beach*, 124 *N. J. L.* 162 (*E. & A.* 1940).

Public control is to be had only in the furtherance of public interest and, if the record indicates private interests are being

served under the cloak of general public good, the utilization of broad police power should not be tolerated. The spirit of the common law did not intend the use of police power in restraint of lawful trade unless there was some compelling public reason justifying it. Our court of last resort, in *N. J. Good Humor, Inc., v. Bradley Beach, supra,* said:

"At all events, the police power cannot be lawfully exerted in this direction unless from pressure of public necessity—where the common good and general welfare imperatively demand it. And this is manifestly not the case here. The business banned by this ordinance is not a nuisance *per se;* nor was the enactment designed to outlaw a nuisance in fact. The proscribed business is wholly lawful in character. * * *

"The power to 'regulate' is ordinarily confined to such reasonable restraints upon the trade or business made the subject thereof as may be demanded by the public interest. It will not usually be construed as including the absolute prohibition of a legitimate business that may be pursued as of common right."

Our own court as presently constituted embraced this doctrine in *Lakewood Exp. Service, Inc., v. Bd. of Public Utility Com'rs., et al.,* 1 *N. J.* 45 (1948).

The law seems clear and I conceive no difficulty in its application to the statute presently under consideration.

The majority opinion lays great stress upon an eight-year-old article from the *Journal of Industrial and Engineering Chemistry* to the effect that flowing gasoline in pipes generates electrical charges which are sometimes capable of producing a spark sufficient to ignite a combustible mixture of gasoline vapor and air and that the nozzle of the hose should be held in contact with the metal tank or receptacle which is being filled with gasoline.

It loses sight, however, of the testimony of the best qualified and the only expert witness who appeared at the hearing. Charles H. Bunn, an engineer with the Standard Oil Development Company, having worked on petroleum hazards as an engineer for thirty years, specializing in fire protection, and being a member of two committees, one the Central Committee on Fire Protection of the American Petroleum Institute and the other the Inflammable Liquids Committee of

the National Fire Protection Association, testified that the self-serving stations were in three categories: the first, not here involved, the most hazardous, with no attendants, operated by a coin machine; the second, where there is an attendant present but not in a supervisory capacity; and the third, the kind presently under consideration, operated by the appellants, "where you do have a fair degree of supervision and where there are some attendants." He said: "It is perhaps unfair to legislate self-service entirely out, because in California, where most of these self-service stations have sprung up, they have not had a bad fire record, so far as I know; up to date there has been no serious fire or accident among those stations." Again he said: "I don't think we have the right to legislate out that third class until they have had a chance to operate."

The self-serving feature banned by the statute in question has been adopted in many branches of retail trade with salu-. tary results in cutting labor costs and in distributing goods and commodities to the consuming public at substantial savings. Super-markets, cafeterias and automatic vending machines are familiar examples of the modern merchandizing trend. Indeed, our progress toward a steadily higher standard of living has been derived from the ingenuity and inventiveness of those who have devised cheaper and more efficient ways of distribution of goods and commodities into the hands of the ultimate consumers. Any blanket prohibition of a new way of transacting lawful business should be carefully scrutinized in the light of the public good to be served.

The whole theory upon which the statute is sustained is the necessity for protection against fire hazards implicit in the handling of gasoline. The record, however, offers nothing excepting theory in support of this argument. Admittedly, during the months the appellants' self-serving filling station was in operation there were no mishaps. In California the most hazardous, according to the expert, coin-operated self-serving pumps, have been used for several years with no fire record. The large number of supervised self-serving stations

that have grown up in the Far West indicates the encounter-ing of no accidental difficulties or conflagrations.

It might be well, while considering the record, to heed our utterance in *Washington National Ins. Co. v. Board of Review of N. J. Unemp. Comp. Comm., et al.*, 1 *N. J.* 545 (1949) :

"And care must be exercised that the efficacy of these constitutional guaranties shall not be whittled away by indulging in unwarranted presumptions of a factual basis for the legislation. In *Gulf, C. & S. F. Ry. Co. v. Ellis, supra*, Mr. Justice Brewer said: 'While good faith and a knowledge of existing conditions on the part of a legisla-ture are to be presumed, yet to carry that presumption to the extent of always holding that there must be some undisclosed and unknown reason for subjecting certain individuals or corporations to hostile and discriminating legislation is to make the protecting clauses of the fourteenth amendment a mere rope of sand, in no manner restrain-ing state action.' "

The most ardent proponents of the statute produced no records or statistics confirming the much heralded anticipated perils. They speculated, rather, on what might occur if per-sons smoke nearby while a tank is being filled or attempt to operate the pumps while intoxicated. In my opinion, it is rather meager and flimsy testimony on which to outlaw a method which has apparently gained widespread public ap-proval in other merchandising fields and, when permitted in the gasoline retail business, has, without harm or injury, resulted in substantial savings to the consuming public.

It hardly seems reasonable to permit a man to operate an automobile, capable of a speed of one hundred miles an hour, on the congested highways with confidence in his obeying the speed law and avoiding accidents and at the same time adjudge him incompetent to fill his gasoline tank which he uses for that purpose. True, the driver is examined and licensed, but if this be deemed to be a necessary safeguard, the operation of the self-service gasoline pump station could likewise be limited to the licensed drivers, who in any event would probably be the chief, if not the only, users of them.

The consuming public, while not named in the legal plead-ings, is vitally affected by the end result and must constantly

be given some consideration in the disposition of the present litigation.

Public policy dictates the interest of the general public is not to be eclipsed or overshadowed by private concern under any guise, whatever it might be. The economic advantages and benefits derived by the people should not be forfeited by the intrusion of the police power unless the record is clear and immutable as to the necessity for it.

No effort has been made by the Legislature to reasonably regulate the mode or manner of dispensing gasoline but the act is aimed specifically at the method of sale employed by the appellants, with the apparent vowed intent to prevent it in toto. Such, at least, is the practical result of its enforcement. Their business is arbitrarily circumscribed by a complete ban, while safety could be assured by adequate and appropriate regulations.

As I read the record, the legislative restrictions are not reasonably related to the public health and safety but are arbitrary and oppressive and not within the domain of police powers and constitute an invasion of the right of private property in contravention of the Federal and State Constitutions.

These, briefly, are my reasons to reverse the judgment below.

Justice Oliphant has authorized me to say that he joins in this dissent.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For reversal*—Justices OLIPHANT and WACHENFELD—2.