## Commonwealth, Appellant, *v.* Stone.

118

Argued September 14, 1959.   Before RHODES, P. J.,
WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT
and GUNTHER, JJ., absent).

*Frederic G. Antoun,* Deputy Attorney General, with
him *Huette Dowling,* District Attorney, and *Anne X.
Alpern,* Attorney General, for appellant.

*James W. Evans,* for appellees.

OPINION BY ERVIN, J., November 11, 1959:

The sole question involved in these appeals is
whether the Act of 1955 making it a misdemeanor to
engage in the budget planning business, as therein de-
fined, is an unconstitutional exercise of the police pow-
ers of the state in violation of art. I, §§1 and 9, art.
III, §7, of the Pennsylvania Constitution or the 14th
Amendment to the Constitution of the United States
of América.   The court below held that the act was
unconstitutional and quashed the indictments.   The
Commonwealth appealed.

The Act of 1955, P. L. 755, 18 PS §4897, provides
as follows: "(a) 'Budget Planning,' as used in this
section, means the making of a contract, express or im-

plied, with a particular debtor whereby the debtor agrees to pay a certain amount of money periodically to the person engaged in the budget planning business, who shall, for a consideration, distribute the same among certain specified creditors in accordance with a plan agreed upon.

"(b) Whoever engages in the business of budget planning is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not more than five hundred dollars ($500), or undergo imprisonment of not more than one (1) year, or both; Provided That the provisions of this act shall not apply to those situations involving budget planning as herein defined incurred incidentally in the practice of law in the Commonwealth."

The defendants argue that the act is an absolute prohibition, not a mere regulation, of the budget planning business and violates their right to engage in a legitimate business under the due process clauses of the State and Federal Constitutions.

The Commonwealth argues that the act does not arbitrarily, unreasonably and unnecessarily interfere with private business or property and that despite its title: "An Act . . . prohibiting budget planning business, and prescribing penalties for violation thereof.", the act in fact does not prohibit the business of budget planning. The Commonwealth says the act is regulatory only, that it allows budget planning but does not allow the budget planner to collect and distribute the debtor's money to the debtor's creditors.

While the act does not prohibit all phases of budget planning, to deny the budget planner the right, at the request of the debtor, to receive money from the debtor and "distribute the same among certain specified creditors in accordance with a plan agreed upon" constitutes a nullification of a vital factor of the budg-

et planning business and we can see no justification for such interference.

In *Com. ex rel. Woodside, Attorney General, v. Sun Ray Drug Co.*, 383 Pa. 1, 10, 11, 116 A. 2d 833, our Supreme Court said: "The scope of the police power of the Commonwealth is necessarily very broad. As was stated in Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840, at p. 519: '. . . the State possesses inherently a broad police power which transcends all other powers of government. There is, therefore, no unqualified right to acquire, possess, and enjoy property if the exercise of the right is inimical to the fundamental precepts underlying the police power. . . '. However, the basis of every exercise of the police power must be to promote or maintain the health, safety or general welfare of the public: White's Appeal, 287 Pa. 259, 134 A. 409. . . .

"The standard to be applied in this type of case was well stated by Mr. Chief Justice STERN in the recent case of Cott Beverage Corporation v. Horst, 380 Pa. 113 (1955), 110 A. 2d 405. In that case the Chief Justice, quoting from Gambone v. Commonwealth, 375 Pa. 547, 101 A. 2d 634, stated at p. 118: ' ". . . By a host of authorities, Federal and State alike, it has been held that a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests, the legislature may not arbitrarily interfere with private business or impose unusual or unecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police

power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts" '."

Is budget planning, as defined in the act, against the public interest? It should be noted that the act does not specifically say that it is. The act does permit lawyers to do it if it is incidental to their general practice of law. The Commonwealth argues that the planner's activity in collecting and distributing the debtor's money "affords the budget planner the opportunity to defraud the public." The mere *possibility*, however, that one engaged in a lawful business may also engage in unlawful practices is no justification for prohibiting the business, if it be a legitimate one in the first instance. Practically every business and profession affords an opportunity for those engaging in it to perform reprehensible acts but this is no reason why persons should be denied the opportunity to engage in a lawful business. A similar contention was made by the Commonwealth but rejected by the Supreme Court in *Com. ex rel. Woodside, Attorney General, v. Sun Ray Drug Co.*, supra, at page 11, wherein the Court stated: "The contention of the Commonwealth when reduced to its essentials is that the common good or general welfare is protected by the prohibition of the sale of Malt-A-Plenty base as such to retailers because such sales create *a possibility* of confusing, defrauding or deceiving the public in that the retailer *may* sell the base as ice cream. As has been previously pointed out, Commonwealth v. Crowl, supra, did not go that far. It merely sustained the legislation as constitutional on the assumption that it prohibited the sale of such products *as ice cream* where such products have less than the minimum butterfat content. In such a case the deception or possibility of deception is obvious. If, in the instant case, there

had been any evidence of sales of the Malt-A-Plenty base as ice cream, such sales could unquestionably be restrained."

In the instant case, it goes without saying that should any one engage in reprehensible practices as a business budget planner, the Commonwealth has a speedy and adequate remedy by criminal prosecution as well as other methods of legal restraint.

In this connection we approve what Judge HOMER L. KREIDER so well said: "It cannot be denied that credit buying today is the keystone of economics in the consumer goods field. It is well known that millions of sales are made in the United States on the installment plan and that billions of dollars are involved in such transactions.[1] The public is constantly being urged to buy now and pay later and this seems to include almost everything from the cradle to the grave. This frequently results in persons or families overextending themselves and their ability to pay for the many items they have purchased on credit. An unexpected cessation of employment or other untoward event may cause a drastic curtailment of installment payments and the consequent threat of repossession of the goods purchased on the time payment plan. When this melancholy moment arrives, the creditor may turn his claim over to a collection agency and thereby relieve himself to some extent of the stress and strain at-

"[1] The enormous growth of intallment buying is graphically set forth in the news letter of July 13, 1959 issued by Business News Associates, Inc., New York, wherein it is stated: 'Consumers hiked their outstanding instalment debt load by a seasonally adjusted $443 million in May, the largest single monthly increase since September 1955 (at the peak of the last credit surge). Moreover, the increase carried outstanding instalment debt to a record $35 billion, toppling the $34.5 billion record set only a month earlier. New credit extended during the month spurted to more than $4 billion on an adjusted basis, also setting a new record.' "

tendant upon the collection of the debt.[2] The debtor on the other hand, is prohibited by the Act of Assembly in question from paying a certain amount of money periodically to a person engaged in the budget planning business, who shall, for a consideration, 'distribute the same among certain specified creditors in accordance with a plan agreed upon.' We see no sound reason for thus discriminating against the debtor. Counsel for the defendant in his brief says that research fails to disclose a similar statute in any other state in the Union, that it appears this statute is unique and original in its prohibition . . .''

In *Adams v. Tanner, Attorney General of the State of Washington et al.,* 244 U. S. 590, a state statute making it a misdemeanor to engage in the employment agency business for a fee was held unconstitutional because it was in violation of the 14th Amendment to the Constitution of the United States of America. The Supreme Court of the United States held that the business was not inherently immoral or dangerous to the public welfare and therefore should not be prohibited, although it could be regulated. That Court, at page 593, said: "The statute is one of prohibition, not regulation. . . .

"We have held employment agencies are subject to police regulation and control. 'The general nature of the business is such that, unless regulated, many persons may be exposed to misfortunes against which the legislature can properly protect them.' Brazee v. Michigan, 241 U. S. 340, 343. But we think it plain that there is nothing inherently immoral or dangerous

---

[2] In *Com. v. U. S. Commercial Services, Inc.,* 179 Pa. Superior Ct. 395, 116 A. 2d 745, the gist of the offense was that though the collection agency could represent a creditor and charge a reasonable fee for such services, it could not represent both the debtor and the creditor, because of the obvious conflict of interest.

to public welfare in acting as paid representative of another to find a position in which he can earn an honest living. On the contrary, such service is useful, commendable, and in great demand. In Spokane v. Macho, 51 Washington 322, 324, the Supreme Court of Washington said: 'It cannot be denied that the business of the employment agent is a legitimate business, as much so as is that of the banker, broker, or merchant; and under the methods prevailing in the modern business world it may be said to be a necessary adjunct in the prosecution of business enterprises.' "

Orders affirmed.