67 N.J. Super. 134 (1961)
170 A.2d 63
AMERICAN BUDGET CORP., A CORPORATION OF NEW JERSEY, ET AL., PLAINTIFFS,
v.
DAVID D. FURMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 14, 1961.
*135 Mr. David Hilowitz for plaintiffs (Messrs. Hilowitz & Stein, attorneys).
Mr. David Landau for defendant Attorney General (Mr. David D. Furman, Attorney General, attorney pro se and attorney for defendant Brendan T. Byrne, Prosecutor of Essex County).
*136 MINTZ, J.S.C.
Plaintiffs seek a declaratory judgment adjudging unconstitutional L. 1960, c. 177 (N.J.S.A. 2A:99A-1 et seq.), enacted January 11, 1961, referred to as the Debt Adjusters Law. Defendant Attorney General of the State of New Jersey counterclaims for injunctive relief against the plaintiff corporation, and for the appointment of a receiver as prescribed by the statute.
Plaintiff corporation applied for an interlocutory injunction to enjoin defendants from enforcing the statute pending a final determination of its validity. At the oral argument on that motion counsel stipulated that the issue be considered as though presented on motion and cross-motion for summary judgment adjudicating the constitutionality of this legislation, and that final judgment be entered on the basis of the oral argument, pleadings, affidavits and briefs filed.
Plaintiff corporation was organized in 1957. Since its inception it has carried on the business of debtor counselling and now has contracts with approximately 1,000 debtors for the performance of said services. The complaint alleges that at the time of seeking the aid of plaintiff corporation many debtors had exhausted all other possible avenues of assistance, that many had maximum loans from several small loan companies and were being harassed by creditors. The plaintiff corporation undertakes to render the service of managing and budgeting the applicant's income for the purposes of liquidating the applicant's debts. It charges an initial fee and monthly carrying charges, both payable over a period of the contract, averaging 10% to 12% of the funds it handles if completed in one year, and 6% if completed within two years. Its services include working out a minimum living budget for the debtor and establishing a feasible program of pro rata liquidation of all the debtor's obligations based upon the available funds.
The subject statute (L. 1960, c. 177) reads as follows:
"1. As used in this act
(a) `person' means an individual, partnership, corporation and association;
*137 (b) `debt adjuster' means a person who acts or offers to act for a consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding, or in anywise, altering the terms of payment of any debts of the debtor; and, to that end, receives money or other property from the debtor, or on behalf of the debtor, for payment to, or distribution among, the creditors of the debtor.
(c) `debtor' means an individual, and includes 2 or more individuals who are jointly and severally, or jointly or severally indebted.
2. Any person who shall hereafter act or offer to act as a debt adjuster in this State shall be guilty of a misdemeanor.
3. The Superior Court shall have power, in an action brought in the name of the State by the Attorney General, to enjoin any person from acting or offering to act as a debt adjuster; and, in such action, may appoint a receiver for the property and money employed in the transaction of business by such person as a debt adjuster, to insure, so far as may be possible, the return to debtors of so much of their money and property as has been received by the debt adjuster, and has not been paid to the creditors of the debtors.
4. The following persons shall not be deemed debt adjusters for the purposes of this act: any attorney-at-law of this State; any person who is a regular, full-time employee of a debtor, and who acts as an adjuster of his employer's debts; any person acting pursuant to any order or judgment of court, or pursuant to authority conferred by any law of this State or of the United States; any person who is a creditor of the debtor, or an agent of 1 or more creditors of the debtor, and whose services in adjusting the debtor's debts are rendered without cost to the debtor; and any person who, at the request of a debtor, arranges for or makes a loan to the debtor, and who, at the authorization of the debtor, acts as an adjuster of the debtor's debts in the disbursement of the proceeds of the loan, without compensation for the services rendered in adjusting such debts.
5. This act shall take effect immediately."
The introductory statement appended to the act recites that "The purpose of this bill is to bar debt adjusters from transacting business in this State."
Plaintiff corporation urges that the act is prohibitory rather than regulatory of a legitimate business, namely, that of debt adjuster. Consequently, it violates the due process and equal protection clauses of the Federal Constitution, which the Fourteenth Amendment makes applicable to the states, and Art. 1, § 1 of the State Constitution, which provides that all persons have natural and unalienable rights, *138 among which are those "of acquiring, possessing, and protecting property."
The subject statute is not a novel one. The business of debt adjuster, at times referred to as debtor counselling, budget planning, debt pooling or prorating, has been the subject of legislation in various states. A number of states have enacted legislation which may be characterized as prohibiting the business of debt adjuster, but expressly exempting lawyers. Fla. Stat. Ann. §§ 559.10 to 559.13 (Supp. 1960); Ga. Code Ann. §§ 84-3601 to 84-3603 (Supp. 1958); Me. Rev. Stat. Ann. ch. 137, §§ 51-53 (Supp. 1959); N.Y. Pen. Law, §§ 410-412; Ohio Rev. Code, §§ 4710.01 to 4710.99 (1958) (semble); Pa. Stat. Ann., tit. 18, § 4897 (Supp. 1960) (declared unconstitutional, Commonwealth v. Stone, 191 Pa. Super. 117, 155 A.2d 453 (Super. Ct. 1959)); Wyo. Stat. Ann §§ 33-190 to 33-192 (1957). Oklahoma enacted a prohibitory statute which exempts only retail merchants' trade associations and non-profit groups formed to collect accounts and exchange credit information. Okla. Stat. Ann. tit. 24, §§ 15-18 (Supp. 1960). In what appears to be a minority of the jurisdictions which have passed statutes dealing with the subject, debt adjusting is declared to constitute the practice of law. Mass. Ann. Laws, ch. 221, § 46C (Supp. 1960); Va. Code Ann., § 54-44.1 (1958).
In other jurisdictions regulatory statutes prevail. Cal. Fin. Code, §§ 12200 to 12331 (Supp. 1959); Ill. Rev. Stat., ch. 16 1/2, §§ 251 to 272 (1959); Minn. Stat. Ann. §§ 332.04 to 332.11 (1947); W. Va. Code Ann. § 6112 (4) (Supp. 1960).
A statute is presumptively constitutional. Two Guys From Harrison, Inc. v. Furman, 32 N.J. 199 (1960). In Fried v. Kervick, 34 N.J. 68, 74 (1961), this principle was reaffirmed, the court stating:
"Consideration of a claim of unconstitutionality of a statute as transgressive of property rights and the command for equal protection of law must be engaged in with an awareness of the well-settled *139 principle that a strong presumption of conformity to State and Federal organic charters attends the enactment. The person asserting such basic invalidity has the burden of overcoming the presumption. * * *"
Factual support for the legislative judgment is to be presumed. Barring a showing contra, the assumption is that the measure rests upon some rational basis within the knowledge and experience of the Legislature. Reingold v. Harper, 6 N.J. 182, 196 (1951); cf. Guill v. Mayor and Council of the City of Hoboken, 21 N.J. 574, 581 (1956).
In Staten Island Loaders, Inc. v. Waterfront Commission of New York Harbor, 117 F. Supp. 308 (D.C.S.D.N.Y. 1953), affirmed per curiam, Linehan v. Waterfront Comm., 347 U.S. 439, 74 S.Ct. 623, 98 L.Ed. 826 (1954), the court sustained the constitutionality of an act which prohibited public loaders from operating on New York piers. It was urged that the prohibition was unreasonable and that regulation would be less harsh and would eliminate the evil practices. The court, however, held that it was not for the judiciary to decide whether the legislature has chosen the best remedy to meet an evil, but only whether the means chosen is constitutional and related to the evil sought to be abolished. The court further held, 117 F. Supp., at page 311:
"It is clear that there is no absolute right to engage in a business which is in conflict with the public interest. `The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned.' Nebbia v. New York, 291 U.S. 502, 527-528, 54 S.Ct. 505, 78 L.Ed. 940. See also Breard v. City of Alexandria, 341 U.S. 622, 632-633, 71 S.Ct. 920, 95 L.Ed. 1233."
In Reingold v. Harper, supra, 6 N.J., at page 195, Justice Heher stated:
"* * * the court cannot substitute its own discretion for that of the lawmaking body, even though there be a difference of opinion as to the need and the propriety of the means devised to serve the need. * * *"
*140 See also Daniel v. Family Security Life Insurance Company, 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632 (1949); Murphy v. California, 225 U.S. 623, 32 S.Ct. 697, 56 L.Ed. 1229 (1912).
The Massachusetts statute was adjudged constitutional in Home Budget Service, Inc. v. Boston Bar Association, 335 Mass. 228, 139 N.E.2d 387 (Sup. Jud. Ct. 1957). That statute provides that the furnishing of services on behalf of a debtor in connection with debt pooling plans, whereby a debtor deposits funds for the making of pro rata payments to his creditors, constitutes the practice of law notwithstanding the fact that the debt pooler never appears in court or prepares legal documents. The court stated at 139 N.E.2d 391:
"The statute here assailed is not unconstitutional as an interference with the purely judicial function to determine who may practice law but is a valid enactment in aid of the court's power to make such a determination."
The Pennsylvania statute which is similar to the New Jersey statute under consideration was declared unconstitutional in Commonwealth v. Stone, 191 Pa. Super. 117, 155 A.2d 453 (Super. Ct. 1959). The court there said, at 155 A.2d 455:
"Is budget planning, as defined in the act, against the public interest? It should be noted that the act does not specifically say that it is. The act does permit lawyers to do it if it is incidental to their general practice of law. The Commonwealth argues that the planner's activity in collecting and distributing the debtor's money `affords the budget planner the opportunity to defraud the public.' The mere possibility, however, that one engaged in a lawful business may also engage in unlawful practices is no justification for prohibiting the business, if it be a legitimate one in the first instance. Practically every business and profession affords an opportunity for those engaging in it to perform reprehensible acts but this is no reason why persons should be denied the opportunity to engage in a lawful business."
The Pennsylvania Court in Commonwealth v. Stone, supra, cited Adams v. Tanner, 244 U.S. 590, 37 S.Ct. 662, *141 61 L.Ed. 1336 (1917), in support of the view that the business may be regulated but not prohibited. Adams v. Tanner was followed in Weaver v. Palmer Bros. Co., 270 U.S. 402, 46 S.Ct. 320, 70 L.Ed. 654 (1926). However, as was stated in Staten Island Loaders, Inc., supra, 117 F. Supp., at page 310, the U.S. Supreme Court has withdrawn from this extreme view of the Fourteenth Amendment "* * * and has made it increasingly clear that it is not for the judiciary to decide whether the legislature has chosen the best remedy to meet an evil * * *." Quoted approvingly in Hazleton v. Murray, 21 N.J. 115, 125-26 (1956).
The police power is not limited to the protection of the health and safety of society, but extends to its financial security. National City Bank of New York v. Del Sordo, 16 N.J. 530, 540 (1954). Consumer credit is a foundation stone of the State's economy. The existence of a rational basis for legislation may be attacked by proof of facts beyond the sphere of judicial notice. But where the legislative judgment is thus questioned, the scope of the inquiry is restricted to whether any state of facts, known or reasonably to be assumed, affords support for it. Reingold v. Harper, supra, 6 N.J., at page 196. Plaintiffs' affidavits indicate that the corporate plaintiff has substantially helped debt-ridden individuals. Defendants' affidavits have a contrary import. This issue need not be resolved. The Legislature could have concluded that while some debt adjusters performed a commendable service, many others committed frauds and abuses, and added little to the smooth functioning of the economy, serving mainly to increase the burden of debt upon the typical user of consumer credit who invokes their aid, without substantially furthering his attempts to liquidate his pre-existing obligations. See "Symposium  Consumer Credit: Developments in the Law  Relief for the Wage Earning Debtor: Chapter XIII, or Private Debt Adjustment?," 55 Nw. U.L. Rev. 372 (1960). Suffice it to say that the Legislature presumably has weighed all *142 the information at hand before resolving the question of the need for prohibitory legislation.
It is possible to quarrel with almost any legislative decision, but "`debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment.' Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 * * * (1932)." Reingold v. Harper, supra, 6 N.J., at page 194. There it was also said, at page 195:
"Judicial interference in this regard would constitute an invasion of the legislative function. Judicial interposition may be had only where there is no real or substantial relation between the legislative act and a valid public interest under the police power or the measure is, beyond all question, a palpable invasion of rights secured by the organic law. The expediency of the statute is for the lawmaking body alone." (Emphasis added)
The challenge to the validity of the statute under consideration, on the ground that it denies the equal protection of the laws, is in effect an assertion that the classification imposed by the Legislature is unreasonable. The applicable rule is stated in New Jersey Restaurant Association, Inc., v. Holderman, 24 N.J. 295, 300 (1957), where the court said:
"The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trail of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. It is easily stated that the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation. But the second proposition is qualified by limitations which compound the difficulties of one who assails the legislative decision. Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt."
See also Two Guys From Harrison, Inc. v. Furman, supra.
*143 There are three classes of persons excepted from the statutory bar:
1. those acting pursuant to statutory authority or court order;
2. attorneys;
3. a person who is a regular, full-time employee of the debtor and who acts as an adjuster of his employer's debt; any creditor of the debtor, or agent of one or more creditors, who renders debt adjustment services to the debtor without cost to him; and any person who at the debtor's request, arranges for, or makes a loan to, him and by his authority acts as an adjuster of the debtor's debts in distributing the proceeds of the loan, without compensation for the debt adjustment services.
As to the first group excepted, the Legislature could rationally decide that the debtors served by them are adequately protected against exploitation by the statutes, court rules, and orders authorizing their activities.
The effect of L. 1960, c. 177, is to prohibit the practice of debt adjusting for a fee, except as to lawyers. Substantially the same result is thus achieved as under the Massachusetts statute. Home Budget Service, Inc. v. Boston Bar Association, supra. Attorneys do not advertise and are subject to a high ethical standard. Moreover, services encompassed by the statutory definition of debt adjuster are often an integral and essential part of an attorney's job when he represents a debt-ridden client. The exemption of attorneys also bears a rational relation to the legislative aim.
The third exempted group has in common the fact that the debtor pays no special charges for their services. They do not add to the already heavy burden of a debtor.
It is quite logical for the Legislature to exempt from the operation of this statute those groups whose activities are not likely to harm the segment of society the statute seeks to protect. These exemptions bear a reasonable relation to the end to be achieved and they operate without arbitrary discrimination upon all those similarly situated.
It is plain by now that in their activities debt adjusters may encroach upon the practice of law. See e.g., N.J.S. *144 2A:170-79; Home Budget Service, supra; Cal. Fin. Code, § 12327 (Supp. 1959); Minn. Stat. Ann. § 332.10 (1947); 26 Unauthorized Practice News 315-16 (1960). Whether laymen who are exempted from the ban of the statute may be involved in the unauthorized practice of law is not before me and need not be decided. See Briggs, "Unauthorized Practice of the Law in Minnesota," 20 Minn. L. Rev. 451 (1936). The legislative exemption of these laymen in no way limits the jurisdiction of the Supreme Court over admission to the practice of law or its inherent power to punish unauthorized practice as contempt. Cf. In re Baker, 8 N.J. 321 (1951).
Plaintiffs have not overcome the presumption of validity and demonstrated that the Legislature's decision is arbitrary and capricious, or that the act bears no real or substantial relation to a valid public interest under the police power. Cf. Reingold v. Harper, supra.
The argument that the subject statute impairs the obligation of contracts made between the corporate plaintiff and debtors, including the individual plaintiffs herein, is untenable. The statute specifically provides for the appointment of a receiver to insure, so far as may be possible, the return to the debtors of so much of their money and property as has been received by the debt adjuster and has not been paid to the creditors of the debtor. Assuming the impairment of some contracts, every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power where the exercise of the power is for an end which is in fact public, and the means adopted is reasonably adapted to that end. Veix v. Seneca Building & Loan Association of Newark, 126 N.J.L. 314 (E. & A. 1941); see also In re Collins-Doan Co., 3 N.J. 382 (1949). Accordingly, L. 1960, c. 177 is adjudged constitutional.
Judgment will be entered on the counterclaim of defendant Attorney General of the State of New Jersey, permanently enjoining plaintiff corporation from acting or *145 offering to act as a debt adjuster. A receiver will be appointed for the property and money employed in the transaction of business by the plaintiff corporation as a debt adjuster.