Frank C. SKRUPA, d/b/a Credit Advisors, Plaintiff,

v.

Keith SANBORN, County Attorney, for the County of Sedgwick, State of Kansas, and William M. Ferguson, Attorney General for the State of Kansas, Defendants.

Civ. A. No. W–2434.

United States District Court
D. Kansas.

Nov. 27, 1961.

Lawrence Weigand, Donald A. Bell and Ernest McRae, Wichita, Kan., for plaintiff.

Keith Sanborn, County Atty., Sedgwick County, William J. Tomlinson, Artie Vaughn, Asst. County Attys., Sedgwick County, Wayne Coulson, Wichita, Kan., Charles Hanson, Asst. Atty. Gen. of Kansas, Topeka, for defendants.

Before HUXMAN and HILL, Circuit Judges, and STANLEY, District Judge.

## PER CURIAM.

This is an action to enjoin the enforcement, operation and execution of a statute of the State of Kansas, known as Senate Bill 366, passed by the 1961 Session of the Kansas Legislature, Laws 1961, c. 190. The grounds on which the action is predicated are that the act is void because it violates and infringes plaintiff's rights guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution.

The action being one to enjoin the enforcement of a state statute, a Three-Judge Court was convened. The cause came on regularly for hearing at Topeka, Kansas, on the 17th day of August, 1961, plaintiff being present by his attorneys, Lawrence Weigand, Don Bell and Ernest McRae, and the defendants being present by their attorneys, Charles Hanson, Assistant Attorney General; Keith Sanborn, County Attorney, Sedgwick County; William Tomlinson, Assistant County Attorney, Sedgwick County; Artie Vaughn, Assistant County Attorney, Sedgwick County; and Wayne Coulson. At the conclusion of the hearing, the case was taken under advisement. Briefs were requested. These have been considered by the court. The court finds these facts.

## FINDINGS OF FACT

Plaintiff operates a business known as "Credit Advisors" with offices in Omaha, Nebraska, and Wichita, Kansas. The business consists of debt adjustment. In general, the business may be defined as consisting of making arrangements with persons in financial difficulties, by which, for a fee, plaintiff undertakes to marshal all his client's creditors and his assets and undertakes to effect an agreement by which the debtor shall pay plaintiff a certain percent of his earnings which are then paid, as agreed upon, to his creditors. This sketchy description of plaintiff's business is sufficient to pinpoint the questions presented in this case.

The 1961 Act referred to above deals with debt adjustment. Plaintiff's business falls within the provisions of the act. The act reads, as follows:

"SECTION 1. For the purpose of this act, 'debt adjusting' means the making of a contract, express, or implied with a particular debtor whereby the debtor agrees to pay a certain amount of money periodically to the person engaged in the debt adjusting business who shall for a consideration distribute the same among certain specified creditors in accordance with a plan agreed upon. Whoever engages in the business of debt adjusting shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than five hundred dollars ($500), or by imprisonment in the county jail not exceeding six (6) months, or by both such fine and imprisonment: Provided, That the provisions of this act shall not apply to those situations involving debt adjusting as herein defined incurred incidentally in the lawful practice of law in this state."

## CONCLUSIONS OF LAW

The court concludes, as a matter of law, that the act in question is prohibitory and not regulatory; but even if construed as regulatory, it is an unreasonable and unwarranted regulation of a lawful business, and, therefore, constitutes a violation of the rights of plaintiff as guaranteed by the due process clause of the

Fourteenth Amendment to the Federal Constitution.

## OPINION

Debt adjustment is a business affected by a public interest and because of its nature is subject to regulation by a state under its police powers. State police powers are broad and comprehensive and it is held, without exception, that federal courts should be loath to interfere with the exercise of such powers. But, on the other hand, we have a clear duty and mandate to protect federal rights guaranteed by the Constitution, and this duty we must not shirk.

The Attorney General has filed a motion to dismiss as to him on the ground that he is not a proper party. There are a number of state cases of a similar nature in which the Attorney General was joined as a party defendant.[1] Apparently the propriety of joining him was not specifically challenged. It seems to have been generally accepted that he is a proper party defendant. The Attorney General of Kansas is the general law enforcement officer of the state. He supervises the activities of county attorneys. In proper cases, he may direct them to enforce the laws of the state. The motion to dismiss should be overruled.

The decision turns upon whether the act in question is regulatory or prohibitory, and if regulatory, whether it manifests a reasonable and necessary regulation of a business which, although subject to police power, is nonetheless a lawful business. A right to regulate does not carry with it the right to adopt unreasonable or unfair regulations.[2] Since there is no dispute in the principles of law which must be applied, and since we are here concerned with the construction of the Kansas statute by application of these principles, no useful purpose would be served by citation and discussion of a number of decisions construing somewhat similar statutes of other states, especially where such statutes differ in material respects from the one under consideration here.

Kansas, in passing the act in question, apparently took it almost verbatim from a similar Pennsylvania statute, 18 P.S. § 4897. The wording of the two acts is almost identical. The Superior Court of Pennsylvania in a well reasoned opinion declared the Pennsylvania act unconstitutional. It held that the Pennsylvania act was not regulatory but prohibitory. It held that prohibiting engagement in a lawful business was an abuse of the police power.[3] We are in full accord with the reasoning and philosophy of the Pennsylvania court.

Debt adjustment by its very nature may lend itself to great abuses and because of this the state has power to regulate it to the end that its citizens may not be overreached by unscrupulous persons. No doubt, the state can, by proper regulations, set up standards and qualifications, and even limit the business to certain classes of qualified persons. But such regulations must be founded on reason. Whatever the state does must bear a reasonable relation to what the state seeks to do—protect those in financial distress from exploitation by unscrupulous and dishonest operators.

A careful analysis of the act fails to show anything that can be denominated regulatory. After defining debt adjustment, the act states that anyone who "engages in the business of debt adjustment shall be guilty * * *" of an offense and punished as defined in the act.

The only exception is that the "act shall not apply to those situations involving debt adjusting as herein defined in-

---

1. Gilbert v. Mathews, Co. Attorney, and John Anderson, Atty. Gen., 186 Kan. 672, 352 P.2d 58.

2. Gilbert v. Mathews, Co. Attorney, and John Anderson, Atty. Gen., supra.

3. See Commonwealth v. Stone, 191 Pa. Super. 117, 155 A.2d 453.

curred incidentally in the lawful practice of law in this state." This, in our opinion, is not a regulation, or if it is, it is an unreasonable regulation. To say that a lawyer may adjust debts only as an incident to a case which is otherwise before him, is most unreasonable. If a lawyer, engaged in the regular practice of the law, concluded there was a greater field for him in devoting all his time to debt adjustment, rather than to the general practice of law, he could not discontinue his general practice and devote his full time to debt adjustment. He could not do so because he can adjust debts only as an incident to his general law practice. We conclude, first, that the act is prohibitory and not regulatory; and that it prohibits anyone from engaging in the business of debt adjustment. But even if the exception is considered as regulatory, it is an unreasonable regulation of a lawful business. We know of no statute aside from the Pennsylvania statute which has gone that far.

Our attention is called to the case of American Budget Corp. v. Furman, 67 N.J.Super. 134, 170 A.2d 63, in which the New Jersey Superior Court reached a conclusion contrary to that of the Pennsylvania Court and held a somewhat similar act constitutional. No useful purpose would be served by a detailed analysis of the Furman case. It is sufficient to say that it differed in many particulars from the Pennsylvania case and from the act we have before us here. We adopt the reasoning of the Pennsylvania case, Commonwealth v. Stone, supra.

Our attention has also been called to the case of Williamson v. Lee Optical Company, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563, in which the Supreme Court held constitutional a rather drastic act by the Oklahoma legislature (59 Okl.St. Ann. §§ 941–947) regulating the business of fitting and selling glasses as a valid exercise of the police power. But that act did not outlaw the business of fitting lenses to a face or duplicating or replacing, into frames, lenses or other optical appliances. The attack on the statute was that it was unlawfully discriminatory in its provisions as to who could engage in such business or the conditions under which the business could be carried on. Under the Kansas statute, no one can engage in debt adjustment as a business. Debt adjustment, though recognized as a lawful business, is declared unlawful.

Judgment will be entered denying the motion of the defendant, Attorney General, to be dismissed from the case. A further judgment will be entered permanently enjoining the enforcement of the act against plaintiff.

ARTHUR J. STANLEY, Jr., District Judge (dissenting).

I cannot agree with the conclusion that the questioned statute is unconstitutional.

That debt adjustment is a business affecting the public interest is not questioned. It has been the subject of legislation in many states. (See the summary of state statutes appearing in the opinion in American Budget Corp. v. Furman, 67 N.J.Super. 134, 170 A.2d 63.) Regulation of the business, therefore, is a proper function of the state in the exercise of its police power. I believe that the Act under attack is an effort on the part of the legislature of Kansas to impose reasonable and necessary regulations on a business affecting the financial stability of the citizens of Kansas.

The Act provides in effect that debt adjustment as therein defined may be engaged in only by attorneys, and then only when carried on "incidentally in the lawful practice of law." It is true that a lawyer who has abandoned his general practice to devote his full time to debt adjustment would be in violation of the statute. I feel sure that this is exactly what the legislature intended. An attorney engaged in general practice, when consulted by a client whose financial affairs had become involved, would, quite naturally, explore all avenues open to his client. He would inquire as to the possibility of defenses to the claims, consider

the applicability of exemption laws, explain the advantages and disadvantages of bankruptcy, and might or might not suggest the initiation of a debt adjustment scheme. One admitted to the Bar but who had chosen to become a debt adjuster and to limit himself to that one narrow field would be likely to adopt a different approach to the problem. He would not be expected to advise his client to seek relief through another means than that in which he specialized exclusively. (If he did, would he not by so doing bring himself within the proviso so that he would not then be barred by the statute?)

In arriving at a decision as to the necessity or reasonableness of the regulation, it is not essential that the court agree with the methods adopted by the lawmakers, or that it be concerned with the wisdom of the legislation. The scope of the court's inquiry should be limited to whether any state of facts, known or reasonably to be assumed, support the legislative judgment. American Budget Corp. v. Furman, supra; Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563.

I am more impressed by the reasoning of the Superior Court of New Jersey in American Budget Corp. v. Furman, supra, than by that of the Superior Court of Pennsylvania in Commonwealth v. Stone, 191 Pa.Super. 117, 155 A.2d 453. The Pennsylvania court leans heavily on Adams v. Tanner, 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336. As the New Jersey court points out, quoting Staten Island Loaders, Inc. v. Waterfront Commission, 117 F.Supp. 308 (D.C.S.D. N.Y.1953), "* * * the U. S. Supreme Court has withdrawn from this extreme view of the Fourteenth Amendment ' * * * and has made it increasingly clear that it is not for the judiciary to decide whether the legislature has chosen the best remedy to meet an evil * * *.' "

I would hold that the Kansas Act is not invalid as in violation of the Fourteenth Amendment and could deny the injunction.