INHABITANTS OF DEXTER *vs.* OWEN E. BLACKDEN.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* J. MORRILL JORDAN.

Penobscot.    Opinion January 9, 1900.

*Constitutional Law. License. Innholder. Actions. R. S., c. 27, §§ 1, 2, 14. Col. Laws. Mass. 1660–1686. Stat. 1891, c. 132. Mass. Stat. 1875, c. 99, § 5.*

Section 2, c. 27, R. S., which provides that no person shall receive a license as an innholder unless he first gives a bond with one or more sureties, contain-

ing a condition that he "shall not violate any law of the state in relation to intoxicating liquors," is not an unconstitutional enactment.

While the general rule is that any person is at liberty to pursue any ordinary calling without restraint, not encroaching on the rights of others, the business of innholding has always been regarded as a privilege rather than as a right, and as a public or quasi-public occupation to be regulated by the legislature for the public convenience and good. It is not a natural right.

Nor is § 1, of c. 132, of the Statutes of 1891, amenable to the objection of unconstitutionality, which (section) provides that any citizen of the state may prosecute any person, for carrying on the business of innholding without a license, in the same manner as the licensing board may prosecute for such offense; there being an existing enactment that the licensing board shall prosecute innholders for any such violations that come to their knowledge, the prosecution to be by complaint, indictment, or action of debt, and all penalties to inure to the town where the offense is committed.

This action being in the name of the Inhabitants of Dexter, which is a proper remedy if the action be not brought in the name of the state, the latter also being a proper, if not the better form of prosecution, it is averred in the writ that the town prosecutes the action by Carrie H. Foster of Dexter, a citizen of this state. *Held;* that the town has full control of the action, and may prosecute it or abandon it as it pleases; that it is not strictly a qui tam action, none of the penalty sued for inuring to any person or party other than the town itself; and that Carrie H. Foster has no control of the action except by the assent of the town, she standing merely in the position of an informer or complainant and aiding and promoting the prosecution in that capacity.

Whether the town shall or not espouse the cause instituted in its name is not a question upon which the defendant can be heard. The presumption is that the town assents to the action, nothing appearing to the contrary.

AGREED STATEMENT.

The first of the above named actions was brought in the name of the "Inhabitants of Dexter who prosecute this action by Carrie H. Foster of said Dexter, a citizen of said State of Maine."

The defendant on the first day of the return term filed the following plea in abatement: (omitting formal parts.)

And now the said Owen E. Blackden comes and defends, etc., when, etc., and prays judgment of the writ aforesaid, because he says that the Inhabitants of the town of Dexter never authorized this action to be brought; and this he is ready to verify; wherefore he prays judgment of said writ; that the same may be quashed and for his costs.

To this plea on the sixth day of the return term the plaintiff demurred as not sufficient in law. The demurrer was duly joined.

Plea was overruled and defendant required to answer over. To this ruling the defendant duly filed exceptions which were allowed.

Thereupon the defendant plead the general issue which was duly joined. The defendant also filed with the general issue the following brief statement of further defense:—

(1)   That said Carrie H. Foster had no authority to bring this action.

(2)   That the action was never authorized by the Inhabitants of Dexter or by the Licensing Board of Dexter.

(3)   That neither the Inhabitants of Dexter nor the Licensing Board had any official knowledge of the commencement of this action, were not in any way consulted or notified about it, nor up to this time have had any such official knowledge or consultation; that it was instituted by the said Carrie H. Foster of her own motion.

(4)   That the statute requiring innholders to give bond with sureties, R. S., c. 27, § 2, is unconstitutional, invalid and against public policy.

(5)   That the statute of 1891, c. 132, amending c. 27, § 14, of R. S., is unconstitutional, invalid and against public policy, so far as regard is had to the following provision :

"Any citizen of the State may prosecute for any violation of any of the preceding sections of this act in the same manner as the Licensing Board may prosecute."

(6)   That if defendant is liable for anything by the way of forfeiture or penalty it is not fifty dollars, but any sum not more than fifty dollars.

"It is admitted that the authority of said Carrie H. Foster to bring said action in the name of the Inhabitants of Dexter is derived solely from § 14 of chapter 27 of the revised statutes as amended by § 1 of chapter 132, laws of 1891, she being a citizen of the State. Also, it is admitted that the defendant was a common inholder in said Dexter as declared in plaintiff's writ, during the time set forth therein, and that he was not licensed therefor as required by statute. Also, it is admitted that the Licensing Board

of said Dexter had knowledge of such violation of the statute by defendant and neglected or refused to prosecute therefor as required by law.

"It is agreed that the only questions to be determined by the court shall be, (so far as the defendant has the right to raise the questions in this case) the constitutionality or validity of the statute requiring innholders to give the bond with sureties, (mentioned as the fourth item of defendant's brief statement,)—and the constitutionality or validity of the statute of 1891, (referred to in defendant's fifth item in his brief statement,) conferring authority upon any citizen of the State to prosecute in same manner as Licensing Board. All other matters are admitted on both sides as regular and sufficient. If either statute is held to be unconstitutional or invalid, judgment is to be for defendant. Otherwise judgment is to be for plaintiffs. The amount of penalty to be fixed by the court. This case is submitted to the law court on this agreed statement of facts."

The other cases named in this agreement were to abide the judgment in the case set out; said judgment to be entered in each of the others as by consent of parties. Full costs to be taxed in favor of the prevailing party, and to the same amount in each case as in the present case.

*T. H. B. Pierce*, for plaintiff.

Courts will not take cognizance of constitutional questions by consent of parties. They must be absolutely necessary to the disposal of the case. *Fish* v. *Baker*, 74 Maine, 107 ; Black, Const. Law, p. 57. The license board must find the person is of "good moral character." *Randall* v. *Tuell*, 89 Maine, 443. It is apparent, therefore, that the bond clause is remote from anything that concerns the defendant's liability, and he is not entitled to set it up in defense of this suit. *Saco* v. *Wentworth*, 37 Maine, 165, and *Saco* v. *Woodsum*, 39 Maine, 258, were cases in which bonds were required as a condition of appeal or right to trial by jury, where the constitutional question came up properly, and bonds were actually given.

In *Randall* v. *Tuell*, supra, this court grounded its opinion upon

the fact that "a license is required of innkeepers for the protection of the public and to prevent improper persons from engaging in (the) . . . . business." . . . . "The statute is explicitly prohibitory." When I travel and of necessity depend upon the public inns, as we all have to, what protection may I expect at the hands of the municipal corporations within whose limits I trust myself? (1) That they see to it that only such persons are allowed by them to be innkeepers as are "persons of good moral character:" (2) That such innkeepers are suitably equipped and prepared for their business and may safely be intrusted with the health, comfort, welfare and property of their guests: (3) That those so appointed have given a special guarantee or security for the conduct of the places they are allowed to maintain, so they may be relied on as respectable places to which confiding travelers may safely bring their wives, children and friends without risk of introducing them to places of drunkenness, rumselling, debauchery, gambling or prostitution. Wandell on Law of Inns, p. 33; Black. Com. Book IV, c. 18, pp. 251–4; 256–7; R. S., c. 130, § 1; c. 135, § 8; *State* v. *Folsom*, 26 Maine, 209.

Act of 1891: Our laws from 1821 to the present time have provided in a peremptory manner for the prosecution of all persons who impose on a community or an unsuspecting traveling public by keeping a common inn without a license. For many years before 1891, the duty and obligation of prosecuting offenders was imposed on the licensing board of each town. The language of the statute was and is, "shall prosecute all violations that come to their knowledge." This is mandatory and requires no consent of town that the duty shall be performed. They could prosecute by complaint, indictment, or action of debt in name of the town. This court has declared that the members of the board are liable to indictment if they fail to perform their duty. *Wiscasset* v. *Trundy*, 12 Maine, 204. They are now liable to a penalty of $20 in an action of debt. R. S., c. 3, § 69. The act of 1891 provides that "any citizen of the state may prosecute in same manner as the licensing board," and also by necessary implication, with the same effect.

Where can be found the constitutional right of a person prosecuted in an action of debt for a penalty, to dictate who shall or may bring the action? It is contrary to all human experience to allow the accused such a right, reaching as it does to the very vitals of government. So the wrong doer may be eliminated from the problem; and this leaves to be considered only the constitutional rights of the municipal corporation in whose name the suit is brought. If its consent was necessary to the bringing of a suit like this to enforce a penalty, it could nullify the statute within its own limits. That result could never have been the intention of the founders of the state or of its lawmakers.

"Where an action is brought to recover a penalty for violation of a statute, and any person is authorized to prosecute therefor in the name of a certain officer in case the proper persons refuse to bring such action, the officer in whose name the action is brought has no power to consent to its discontinuance without the consent of the person by whom it was commenced." 18 Am. & Eng. Ency. p. 281.

*J. and J. W. Crosby*, for defendant.

Defendant not liable, because, R. S., c. 27, § 2, is unconstitutional in three respects; (1) It requires a bond with sureties that he will not violate sundry laws of the State.

(2) It violates the bill of rights in several respects—especially the provision that "no man shall be twice put in jeopardy of life or limb." (3) The statute is in violation of XIVth Amendment to the U. S. Constitution.

Act of 1891: The law under which this action is commenced is in violation of every principal of liberty—in conflict with various provisions in the bill of rights—is without precedent—a perfect monstrosity—an unheard of infringement of rights retained by the people referred to in Art. 24 of Bill of Rights.

This case is a novelty. No precedent can be cited for it. None can be found in any digest.

This court understands as well and better than any others the extravagant length to which the temperance fanaticism has gone in this State. It has attempted repeatedly to trample on the con-

stitution and several of the statutes have been found to be unconstitutional by this court, and some other unconstitutional provisions which once existed have disappeared without getting to this tribunal.

It assumes that the act of selling any liquor which drunk to excess may intoxicate, even the sale of a pint of cider as a beverage, is a crime of such exceptional atrocity that it is not and cannot be protected by our bill of rights—that the limitations upon the powers delegated to the legislature however much they may and do apply to the administration of the law in every other case—cannot apply to the case of the sale of intoxicating liquors.

The statute is an unjustifiable, unconstitutional interference with a man's natural and unalienable rights. It requires a peaceable man—a man never known to have committed any crime and never threatened to commit any, to get some one to be responsible for him that he will not commit a crime in the pursuit of a well known, ancient, common-law calling—a calling recognized as such for thousands of years previous to Magna Charta and still so recognized.

There are many rights and privileges retained by the people in our Democratic form of government, as is positively assured in § 24, of the Bill of Rights, with which the legislature can have no right to interfere under any circumstances, except under their police power.

The occupation of a hotel keeper is a well understood occupation recognized as customary for thousands of years—certainly ever since the time when St. Paul in the Appian Way met his friends at the three taverns and took courage; allusion to which occupation might be read in cuneiform characters on the bricks of Babylon and Nineveh. Now and long before the existence of Magna Charta, its prohibition, except upon the condition of his giving a bond with surety, would deprive many a poor man of his means of livelihood, be the means of starving his wife and children perhaps. Why? Because he has not the ability to procure a bond with sureties. If the penal sum may be $300 it may as well be $3000. Whatever it might be would depend upon the freak of the legisla-

ture.   Impossible for many a poor man to procure it, especially as such bond as has been intimated by the court is not subject to chancery.   And Judge Cooley, (Const. Lim. 355) says:   "While every man has a right to require that his own controversies shall be judged by the same rules which are applied in the controversies of his neighbors, the whole community is also entitled, at all times, to demand the protection of the ancient principles which shield private rights against arbitrary interference, even though such interference may be under a rule impartial in its operation.   It is not the partial nature of the rule, so much as its arbitrary and unusual character, which condemns it as unknown to the law of the land."

"The general law undoubtedly is that any person is at liberty to pursue any lawful calling and to do so in his own way, not encroaching upon the rights of others.   This general right cannot be taken away."   It is inconsistent with our bill of rights, § 6, which says that a man shall not be deprived of his life, liberty, property or privileges but by the judgment of his peers or by the law of the land.   It is inconsistent with § 19, Bill of Rights, which enacts that every person for an injury done to him, his person, reputation, property or immunities shall have a remedy by due course of law. He is, in fact, deprived of his property, his privileges, his immunities in a common, ancient, innocent and well-known occupation, for the reason that he cannot procure the bond, whereas a wealthy man finds no difficulty.   Section 1—The words "his natural and unalienable rights, the right of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness,"—are an assurance to the poor man that he may pursue any lawful calling, only subject to such penalties as the legislature may enact under their police power. These phrases—"reputation, property and immunities," "rights and immunities," "due process of law," "law of the land"—are words of great significance, and their meaning is well understood.

A man's calling is a man's property.   *Slaughter-House Cases*, 83 U. S. p. 420, et seq.   Dissenting opinion by Judge Bradley. Fundamental principles retained by the citizens are very extensively discussed by Judge Bradley and strongly in favor of the doctrine advocated here.

The calling of an attorney is property. Cooley, Con. Lim., note, p. 438. But a victualer has to buy his right. What does he pay for it? He pays the trouble and inconvenience of getting other men to become his sureties that he will not transgress some law of the state. "A vested right of action is property in the same sense in which tangible things are property and is equally protected against arbitrary interference. Where it springs from contract or from the principles of common law, it is not competent for the legislature to take it away. And every man is entitled to a certain remedy in the law for all wrongs against his person or his property and cannot be compelled to buy justice or to submit to conditions not imposed upon his fellows, as a means of obtaining it." *Ib.* p. 445–6.

That there are "rights which did not come from the constitution, but from principles antecedent to and recognized by it" is emphatically recognized in *Benson* v. *Mayor*, 10 Barb. 223–244, and in *Goshen* v. *Stonington*, 4 Conn. 209–225. These cases are cited with approbation by Cooley. Lim. *199–200* with quotations.

This statute requiring the bond is also unconstitutional for another reason. It is in violation of § 8, Bill of Rights: "No person for the same offense shall be twice put in jeopardy of life or limb." The words "jeopardy of life or limb" have a very extensive significance. This point has already been decided by the court. It is no longer an open question. It was settled in *Saco* v. *Wentworth*, 27 Maine, 175–6. This very same chapter 27 requires the hotel keeper or victualer to do two things. 1st. To give the bond and forfeit $300 if he breaks it in an action on the bond. 2d. It requires also that he shall be tried in divers other cases on complaint or by indictment if charged with a commission of any of the offenses embraced by the bond. This is a clear violation of § 8 of the Bill of Rights.

It may be granted that a statute which simply required a license and imposed a penalty for keeping a hotel without a license might be valid. But this statute imposes a penalty for the sole reason that the innholder kept an inn without giving a bond imposed by an unconstitutional law. It was an unconstitutional condition;

therefore no condition.   Therefore there is no law against keeping a hotel with or without a license.   Under this statute, "any citizen" of the State,—man or woman,—may commence an action in the name of the town in any county where defendant may reside and perhaps in any county where the "citizen" may reside.   Consider the principle involved in such practice.   If the legislature can authorize such an act, it may confer a similar power upon any other citizen in any other case.   The number of crimes, which it has made the duty of the licensing board to prosecute, are very numerous.   For all the crimes referred to in sections 1 to 13 of chapter 27, R. S.,—which in fact cover every offense embraced in the whole chapter relating in any way to intoxicating liquors,—for every such offense this action may be commenced in the name of the town by some remote citizen, not known perhaps to any individual in the town.

The prosecutor,—"any citizen,"—is authorized to prosecute "in the same manner as the licensing board may prosecute."   Of course, it would be legitimate for the licensing board to use the funds of the town for all necessary incidental expenses—for witnesses—copies—counsel fees, etc.   "Any citizen" may do the same "in the same manner;" so that, in the four cases now before the court, the town of Dexter may be liable for hundreds of dollars, not included in any bill of costs, and for expenditures incurred, whether successful or defeated.

The statute is in conflict with the XIVth Amendment:   (1) A man is deprived of his rights without due process of law.   (2) He is deprived of the equal protection of the laws.

"No statement of the general meaning of the phrases "due process of law" and "the law of the land" is more often quoted than that given by Mr. Webster in the Dartmouth College case. It defines the term in its relation to procedure as well as to substantive rights.   Mr. Webster said:   "By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.   The meaning is, that every citizen shall hold his life, liberty, property and immunities, under the protection of the

general rules which govern society. Everything which may pass
under the form of an enactment, is not, therefore, to be considered
the law of the land." Judge Story's definition is succinct and
accurate : "Due process of law in each particular case means such
an exertion of the powers of government as the settled maxims of
law permit and sanction, and under such safeguards for the protec-
tion of individual rights as those maxims prescribe for the class of
cases to which the one being dealt with belongs." Guthrie's Lect.
XIVth Amendment, pp. 69-70.

No one questions the police power, but no one will consent to
have it so monstrously extended as to be the ruin of liberty.

See *King* v. *Hayes*, 80 Maine, 206. Destruction of a horse by
the agent of society to prevent cruelty to animals held to be illegal
without notice. The law of R. S., c. 124, § 42, held to be uncon-
stitutional. Many other cases cited. *Portland* v. *Bangor*, 65
Maine, 120, in which it was held that the commitment of a pauper
to the workhouse by the overseers without a judicial investigation
and notice to the pauper is not in accordance " with due process of
law," and is a violation of XIVth Amendment.

SITTING : PETERS, C. J., EMERY, HASKELL, WISWELL, SAV-
AGE, FOGLER, JJ.

PETERS, C. J. These cases, in all respects alike, present by
agreement of parties the single question whether certain clauses of
the liquor-statutes, taken singly or combined, are, so far as applica-
ble to the facts stated, constitutional or not.

Section 2 chapter 27, R. S., provides that no person shall receive
a license as an innholder or victualler until he has given bond with
one or more sureties with the condition annexed that the licensee
shall conform to the provisions of law relating to the business for
which he is licensed. . . . . "and shall not violate any law
of the state in relation to intoxicating liquors." Section 14 of the
same chapter reads as follows : " The licensing board shall prose-
cute for the violation of the foregoing sections (of ch. 27) that
come to their knowledge by complaint, indictment, or action of

debt: and all penalties recovered shall inure to the town where the offense is committed. Section 1, chapter 132, Laws of 1891, enacts that "any citizen of the state may prosecute for a violation of any of the preceding sections (of ch. 27) in the same manner as the licensing board may prosecute."

The counsel for the defendant in an exhaustive argument strongly urges the reasons why in his view these statutes are unconstitutional, while to our minds his objections are in effect merely an argument as to the expediency of the statutes rather than as to their want of constitutionality.

It is virtually admitted in behalf of the defendant that all the statutory requirements contained in chapter 27 of the revised statutes relating to innkeepers, however extreme and severe they may be, might not be regarded as tainted with unconstitutionality, were it not for the one imposing on the innholder the necessity of giving a bond with sureties for his observance of the liquor enactments as a condition of his being granted an innholder's license. We apprehend that the fallacy of this position is, in what we believe to be, an erroneous assumption by the defendant that the business of keeping a hotel is a private and natural right of which a person cannot be directly or indirectly deprived. If this foundation proposition be wrong, then all the superstructure built upon it falls to the ground.

Of course, we must admit that the position thus assumed would be a sound one as to very many private employments, and perhaps as to all the usual employments in ordinary business life. But innholding has always been regarded in this country as a public or quasi-public business over which the legislature may rightfully exercise an unusual control.

Judge Cooley strikes the true key in stating the general rule and its exceptions. "The general rule," he says, "undoubtedly is that any person is at liberty to pursue any lawful calling, and to do so in his own way, not encroaching on the rights of others. This general right cannot be taken away. But here, as elsewhere, it is proper to recognize distinctions that exist in the nature of things, and proper under some circumstances to inhibit employ-

ments to some one class while leaving them open to others. And some employments in which integrity is of vital importance it may be proper to treat as privilege merely, and to refuse a license to follow them to any who are not reputable." Cooley Con. Lim. 5th ed. 745. The author places stress upon the reasonableness of restraining rules and regulations, where the occupations, though proper in themselves, may be subject to special evils, and affording peculiar opportunities for imposition and fraud. The business of marketmen, draymen, pilots, brokers, auctioneers and others, comes within this category. The persons engaged in such employments are often required by law to take out licenses and submit to such rules and regulations in their business as may seem to be important for the public convenience and protection.

We are not, however, forgetting that the great point of objection to the validity of the statute, as urged by the defense, is the feature of requiring the bond with sureties. But we must at the same time remember, as before declared, that the innholder has no natural right to pursue the business of innholding, and that it is an exceptional privilege which may or may not be conferred upon him by the public authority, and that his chance for obtaining a license is dependent upon whether the licensing board decides his appointment to be necessary and that he sustains a good moral character. By section 1, chapter 27, R. S., the licensing board may license "as many persons of good moral character . . . . as they deem necessary to be innholders." This authority involves questions to be determined by the board and not by the applicant. This idea of limiting the number of innholders in a place has always prevailed in most if not all of the states. In Colonial days the General Court of Massachusetts annually prescribed how many each town in the colony should be entitled to, especially naming the towns that should be entitled to more than one, and the business of innholding was regulated with exacting restraints and impositions which would perhaps be regarded as oppressive at the present day. It is, therefore, not easy to see that this question of constitutionality in its present aspect is a practical one between these parties. Colonial Laws, Mass. 1660–1686. (Whitmore, Boston, 1889,

1890.)    As a merely academical question we cannot indulge in its discussion.

The penal sum of the bond ($300) cannot be regarded as extreme at all when it is considered that the accompanying license would confer a right and privilege where none existed before. The statute requirement certainly cannot be regarded as prohibitory in its nature or effect. There is nothing indicating that the defendant could not have easily furnished the bond had he been disposed to do so. There are many instances in the statutes where bonds are required of officials and quasi-officials for the faithful discharge of their duties, even where no money is necessarily to pass through their hands as officers, but where honest conduct is to be ensured.

In *Lunt's case*, 6 Maine, 412, it was held not unconstitutional to require a common seller of liquors to purchase a license and pay certain duties before entering on his business. There cannot be very much difference in principle between requiring pre-payment of money and requiring security for the payment of money for damages if afterwards incurred. In *Day* v. *Frank*, 127 Mass. 497, a licensee was required to give a bond with sureties to pay all costs, fines and damages recoverable against him under the Massachusetts statute of 1875, ch. 99, § 9, and while the main question here arose in another form there, it was not noticed by counsel or court, while other questions were discussed and considered.

Upon another ground is the constitutionality of the statutes in question attacked by the defense. It is contended that an action cannot be lawfully instituted " by any citizen of the state " in the name of a town, and the burden of an expensive litigation be imposed on the town without its consent; and that any statute authorizing such a thing is null and void. The first obvious answer to this proposition is that the counsel for the defense cannot represent the plaintiffs in order to raise such a question. He is defending against the plaintiffs and not acting in their behalf. The only legitimate controversy on the record of the case is whether the town can maintain this particular action while it is apparently at least striving to do so, and all else in this connection is illusory and theoretical merely. But there is much more answer

than this. The position of the defense misappreciates the true position of the plaintiffs. The town has the entire control of the action and can repudiate it if it pleases, although the presumption is that it acquiesces in the proceedings, nothing appearing to the contrary. This is not technically a qui tam action. The town sues for a penalty because the penalty belongs to the town; it sues to recover its own. Carrie H. Foster, who claims to prosecute the suit as a citizen of Maine, can only do so by the plaintiffs' consent. She is not plaintiff, but stands rather in the position of an informer for the state or town, somewhat in the position of a complainant who obtains an indictment,—an aid and promoter of the prosecution. She informs the town of the penalty due them, and they sue for it. Section 14 of the chapter, 27, says the licensing board shall prosecute for any violations by complaint, indictment, or action of debt, implying the institution of proceedings in the name of the state which perhaps is the better and more satisfactory kind of remedy. But the town can sue directly for the penalty because it owns all of it. So held in *Wiscasset* v. *Trundy*, 12 Maine, 204, an action where the facts and pleadings were essentially the same as in the present case. The writ here is in all essential respects, as far as form goes, like the writ there.

Even were this a qui tam action, the principle would be the same. The action would be under the control and direction of the town as the actual plaintiff. In a qui tam action at common law, a plaintiff may abandon or continue his action at his pleasure. If, however, he becomes nonsuited without the consent of the court, any other person interested in the penalty may sue again as if no action had been brought before. *Wheeler* v. *Goulding*, 15 Gray, 539; *Colburn* v. *Swett*, 1 Metc. 232; *Smith* v. *Look*, 108 Mass. 139; *State* v. *Johnson*, 65 Maine, 262; *Dunn* v. *Framingham*, 132 Mass. 430. Where only a moiety of a penalty goes to an informer he cannot sue for it in his own name, although it is otherwise, as before seen, if he is entitled to all of the penalty. As part owner of the penalty the informer does not control the action, but receives his share when recovered. Same authorities as before.

What would have been the position and legal rights of the parties had the informer or prosecutor instituted the proceedings in her own name as plaintiff we need not directly inquire. She has not done so.

We think the penalty to be assessed against the defendant should not be large as there are several actions and full costs are to be recovered in each case.

> *Judgment for plaintiffs in each action for ten dollars and full costs.*