55 Wn.2d 546 (1960)
348 P.2d 981
In the Matter of the Revocation of the License of MYRON F. HUBBARD, Appellant,
v.
THE WASHINGTON STATE MEDICAL DISCIPLINARY BOARD, Respondent.[1]
No. 35000.
The Supreme Court of Washington, Department One.
January 28, 1960.
Foster & Foster (Loyal H. McCarthy, of counsel), for appellant.
The Attorney General and Oliver J. Neibel, Jr., Assistant, for respondent.
DONWORTH, J.
Appellant, a resident of the state of Oregon, was at all times between October, 1946, and February 16, 1958, duly licensed to practice medicine and surgery in this state. The record shows that he was also licensed to practice his profession in Oregon and had practiced there for a number of years. On March 19, 1957, appellant was committed to the Oregon state hospital by order of the circuit court of Multnomah county, Oregon, upon a finding that he was mentally ill. Under the laws of the state of Oregon, such an adjudication and commitment to the state hospital is presumptive evidence that the person committed is mentally incompetent.
*548 On January 29, 1958, appellant was discharged by the superintendent of the hospital as competent pursuant to the provisions of ORS 426.300, and a certificate of competency was filed in the circuit court of Multnomah county. On February 3, 1958, that court entered an order, pursuant to ORS 426.305, discharging appellant from the hospital and declaring him to be mentally competent.
The Washington state medical disciplinary board (herein called the board), respondent herein, was created by Laws of 1955, chapter 202, p. 829 (RCW 18.72.010 et seq.). In September, 1957, the board, being advised of the court order of March 19, 1957, appointed three of its members to hear charges of unprofessional conduct against appellant based on his commitment to the state hospital. On January 6, 1958, appellant was served with the statutory notice issued by the secretary of the board advising him that a hearing on these charges would be held on February 15, 1958.
Appellant was present at the hearing in person and was represented by counsel (other than his present counsel). He did not testify. His counsel challenged the jurisdiction of the board to consider the issue of his competency on the ground that his competency had been restored by the order of the circuit court of Multnomah county entered February 3, 1958, which declared him to be mentally competent.
On February 16, 1958 (the day after the hearing), the board made an order revoking appellant's license to practice his profession in this state. Appellant, pursuant to RCW 18.72.280, prosecuted an appeal from the board's order to the superior court for Thurston county where the board's motion for a summary judgment in its favor was granted by the trial court. From that judgment appellant has appealed to this court.
His five assignments of error are:
"I. The court erred in granting summary judgment for respondent and in entering its decree approving the order of respondent board revoking appellant's license.
"II. The court erred in finding that respondent board had jurisdiction in the premises.
"III. The court erred in denying appellant due process of law and equal protection of law.
*549 "IV. The court erred in failing to accord full faith and credit to a decree of a court of competent jurisdiction.
"V. The court erred in giving retrospective effect to RCW 18.72.030 (14)."
Counsel for the parties have filed an agreed statement of facts so that no factual issue is involved. The issues of law, as we view the case, arise out of the refusal of the board and the trial court to be bound by the order of the circuit court of Multnomah county, entered February 3, 1958, which declared appellant to be mentally competent.
In 1955, the legislature, in the exercise of the police power, enacted the statute creating the board and defining its authority. The stated purposes of the act (see RCW 18.72.010) are to protect the public health and to create an adequate public agency as a disciplinary body for the medical profession, because the health of the people of this state is of paramount importance and the conduct of the members of the medical profession plays a vital role in preserving the public health.
Among the powers and duties of the board prescribed in the act (RCW 18.72.150) is the right:
"(2) To investigate all complaints and charges of unprofessional conduct against any holder of a license and to hold hearings to determine whether such charges are substantiated or unsubstantiated; ..."
The term "unprofessional conduct" is defined in RCW 18.72.030 as any one or more of fourteen specific items. The first thirteen items constitute acts that are either mala prohibitum or mala in se when voluntarily performed by a licensed practitioner. The fourteenth item is described as:
"(14) Declaration of mental incompetency by a court of competent jurisdiction."
[1] While such a declaration of mental incompetency by a court of competent jurisdiction may result from circumstances which are not morally reprehensible (when compared with the first thirteen items) and are often caused by factors over which the practitioner has no control, we cannot say that the legislature, in its exercise of the police power, could not designate such mental incompetency as *550 an act of unprofessional conduct which would constitute a legal ground for revoking the practitioner's license.
[2] In discussing his first two assignments of error, appellant argues that it was error for the board and the trial court to give effect to the first order of the Oregon court (the order committing him to the state hospital as mentally incompetent) and to ignore the second order of the same court entered some ten months later (the order discharging him as mentally competent). In other words, his position is that, since the Oregon court had the power to declare appellant mentally incompetent, it likewise had the power to later declare him mentally competent, and the board should have given full faith and credit to both orders.
We think that this argument overlooks the distinction between a practitioner (1) being mentally competent to make contracts and to transact business in the usual manner, and (2) being mentally competent to practice medicine and perform surgical operations. The legislature has said, in the 1955 act, that the declaration of mental incompetency by a court of competent jurisdiction constitutes unprofessional conduct which warrants the board in revoking or suspending the license of the practitioner involved to practice medicine and surgery in this state.
It does not follow, however, that a practitioner so found to be mentally incompetent is automatically entitled to a restoration of his license to practice his profession upon the entry of a later court order declaring him to be mentally competent. This is so because the fact that he has been found by the court to be competent to make contracts and engage in the ordinary business transactions incident to the management of his personal affairs does not ipso facto restore his qualifications to practice medicine and surgery. In addition to being competent to enter into contracts and engage in ordinary business transactions, a person desiring to resume the practice of medicine and surgery must convince the board that he possesses the peculiar qualifications which the legislature has prescribed for the obtaining of a license to practice this profession originally (RCW 18.71.010 et seq.).
*551 In the present case, appellant stood squarely on the second court order as automatically restoring his qualifications to practice his profession. He did not testify before the board nor produce any witnesses to testify as to his mental ability to practice medicine and surgery at the time of the hearing. The board, having found that appellant had been declared mentally incompetent by a court of competent jurisdiction, was authorized to revoke his license. The legal effect of the second court order was not to cancel out the first order.
[3] In support of his third assignment, appellant quotes from our recent decision in In re Flynn, 52 Wn. (2d) 589, 328 P. (2d) 150 (1958), which involved the revocation of a license to practice dentistry, as follows:
"`But revocation of a license is much like the death penalty in criminal law  it is not imposed to reform the particular person involved.'"
Appellant contends that the penalty of revocation of his license is not only contrary to law (because no legal significance is attached to the second order of the Oregon court) but, in addition, is highly irregular, arbitrary and capricious, because it was not imposed
"... for something appellant did or failed to do in his professional capacity, either malum in se or malum prohibitum but for a condition of ill-health which no longer exists and which did not exist at the time the order was entered or the hearing was held."
While conceding that the state may license medical practitioners and provide for the revocation of such licenses, he argues that he was unconstitutionally denied due process of law and equal protection of the laws by the arbitrary interpretation of RCW 18.72.030 "as a continuing death sentence imposed by the legislature."[2]
*552 It seems to us that the legislature has provided an adequate remedy for appellant in § 38 of the 1955 act (RCW 18.71.120), which states:
"The director must refuse a certificate to any applicant guilty of unprofessional conduct: Provided, That any person whose license has been suspended or revoked under the provisions of this act may apply to the board for reinstatement at any time and the board may hold hearings on any such petition and may order reinstatement and impose terms and conditions thereof and issue a certificate of reinstatement to the director of licenses."
If his mental competency to practice medicine and surgery has been regained, appellant may avail himself of this means of having his license to practice his profession reinstated. Thus, there is no "continuing death sentence" imposed by the act, nor can we find any arbitrary or capricious action by either the board or the trial court in this case, nor has appellant been deprived of any of his constitutional rights in the premises. As we stated in State v. Hazzard, 139 Wash. 487, 247 Pac. 957, 47 A.L.R. 538 (1926):
"There is a wide distinction between the right which one, whether felon or free, has to hold his own property against the world and deny even the state the right to take it from him without compensation therefor, and that other right to practice a profession which demands peculiar qualifications in order to protect the public, and requires a license. As to the latter, there can be, strictly speaking, no inherent right thereto, if considered apart from the question of qualifications. One qualified in all respects has a right to a license, but one unqualified has no right whatever."
[4] Appellant's fourth assignment of error (that full faith and credit was not accorded the Oregon court's order of February 3, 1958) is without merit. The board and the trial court accorded that order full faith and credit to the *553 full extent to which it was entitled, to wit, as a legal declaration that appellant was mentally competent. The legal effect of that order was to establish appellant's competency to execute contracts, enter into a valid marriage, convey his property, execute a will, and engage in other business transactions. However, the Oregon court could not, nor did it attempt to, determine appellant's competency to engage in the practice of medicine and surgery. This is a question which, of necessity, requires the judgment of experts. Thus, the legislature of this state has wisely created a board composed of licensed practitioners of medicine and surgery to pass upon appellant's competency in that regard.
[5] Lastly, it is contended that the trial court erred in giving subdivision (14) of RCW 18.72.030 retrospective effect. We find no basis in the record for this assignment of error. There is no timeless condemnation of appellant because of his being declared mentally incompetent by the Oregon court's first order. As already pointed out, appellant may, under the 1955 statute (RCW 18.71.120), apply to the board for reinstatement and produce evidence of his mental competency to resume the practice of medicine in this state.
Having fully considered appellant's assignments of error and having come to the conclusion that none of them is meritorious, the judgment is affirmed.
WEAVER, C.J., MALLERY, ROSELLINI, and HUNTER, JJ., concur.
NOTES
[1] Reported in 348 P. (2d) 981.
[2] Perhaps appellant's position in this respect is more precisely stated in his counsel's argument before the board: "... If there were a situation of that kind [involving moral turpitude] before the Board I would say you would have a say-so but here is a man who is not a resident of the State of Washington, is not attempting to practice in the State of Washington. He probably never will but we don't want a record here to go out to other states and preventing this man from getting a license. If he ever comes to Washington and desires to practice medicine here there is nothing to prevent this Board then from saying `You better find whether this man should practice medicine in the State of Washington.' He is not practicing in the State of Washington and probably never will but your adverse action here could probably prevent him from practicing in other states, and would probably follow him right down the line."