Rupert WATSON d/b/a Maine-
Wide Adjusters

v.

STATE of Maine COMMISSIONER
OF BANKING.

Supreme Judicial Court of Maine.

Oct. 27, 1966.

Malcolm S. Stevenson, Bangor, David R. Downing, Bucksport, for plaintiff.

Jerome S. Matus, Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

MARDEN, Justice.

On report.

The factual background is as follows: During the period September, 1948 to January, 1960, plaintiff owned and operated a collection agency. In January, 1960, he was found guilty of embezzlement and executed a sentence in the Maine State Prison from which he was released in February of 1963. Upon his release, he renewed the operation of his collection agency. The 102nd Legislature (1965) passed "An Act regulating collection agencies" (Chapter 430 P.L.1965), effective January 1, 1966, which is now 32 M.R.S.A. §§ 571–583 inclusive. By the terms of this Act a collection agency as therein defined (§ 571), and including a proprietorship so operating, with exclusions (§ 572), is required to procure an annual license (§ 573), supply upon request financial statements, file surety company bond and generally is subject to supervision of the State Bank Commissioner. By Section 575 no license is to be granted an applicant who has been convicted in the State or Federal Courts of listed crimes, including embezzlement.

In compliance with this Act, the plaintiff applied for a license, supported by the required financial statement and cash deposit as a bond, which application was denied on

the basis of plaintiff's reference conviction.

Plaintiff then petitioned for injunctive relief against the enforcement of the statute, and for a declaratory judgment on the validity of the legislation. The case was reported.

The complaint, with amendments, attacks the constitutionality of the statute as being not a proper exercise of the police power of the State, but if it is, that it is discriminatory, that it constitutes an impairment of the obligation of contracts, that it violates constitutional due process, and that it is an *ex post facto* law.

Upon report the issues are expressed as four,—that the defendant's refusal to grant plaintiff a license was (1) the application of an *ex post facto* law, (2) the application of a law retrospectively which impaired the obligation of contracts, (3) deprivation of property without due process of law, and (4) the application of law that is discriminatory, arbitrary and denies plaintiff equal protection of the laws. Our consideration is confined to these issues.

■ ■ Plaintiff, in his composite attack, challenges the law as exceeding the State's police power. The general power of the State to preserve and promote public welfare, even at the expense of private rights, but within constitutional limitations, and by means reasonably tending to correct some evil or promote some public interest, is basic. State v. Old Tavern Farms, Inc., 133 Me. 468, 470, 471, 180 A. 473, 101 A.L.R. 810. See also Dexter v. Blackden, 93 Me. 473, 484–485, 45 A. 525, citing Cooley on Constitutional Limitations. It is a matter of common knowledge that creditors solicit the aid of collection agencies only after they have exhausted the collection resources within their own organizations and not infrequently only after the

claims are written off their books. By virtue of the fact that the creditor has largely given up the claims as realizable assets, their supervision of and interest in the agencies' activities is not lively. This may, and not infrequently does, open the way for the agency to indulge in collection practices and accounting procedures which in the public interest and welfare, including both the credit and debit communities, establish need for, and propriety of, regulation. The legislature was competent to declare the activity as one affecting the public welfare.

"The wisdom, necessity or expediency of a legislative enactment is not subject to judicial review." Treffry v. Taylor (Wash.1966) 408 P.2d 269, [14] 273 (Regulation of Contractors)

See also Reynolds v. Louisiana Board of Alcoholic Beverage Control (1966) 248 La. 639, 181 So.2d 377, [4] 380 (Regulation of liquor distributors); Ferguson v. Skrupa (Kan.1963) 372 U.S. 726, 83 S.Ct. 1028, [2–5] 1031, 10 L.Ed.2d 93 (debt adjusters); State ex rel. Clark v. Brown (1965) 1 Ohio St.2d 121, 205 N.E.2d 377, [3] 380 (budget counseling service); and in principle, Baxter v. Waterville Sewerage District, 146 Me. 211, 214, 79 A.2d 585.

The extent to which regulation in the public interest has been held constitutional is indicated by the substantial list of enterprises so regulated, shown in 16A C.J.S. Constitutional Law § 659 b., to which list others periodically have been added.[1]

"The regulation and licensing of commercial and collection agencies has been upheld, for the most part, against various constitutional objections. Although no extensive line of cases has been developed, it seems clear that as a general matter the singling out of commercial or credit agencies as objects for the exer-

---

1. Auctioneers, Collection Agencies, Commercial Divers, Debt Adjusting, Fortune Tellers, Landscape Architects, Laundries, Masseurs, Medical Service Corporations, Naturopaths, Pawn Brokers, Rooming Houses, TV and Radio Repairmen, and Watch Repairmen.

cise of the police power represents a reasonable classification." Annot. 54 A.L.R. 2d 881 § 2, 883.

See also Hankins v. Spaulding (1957) 78 Idaho 533, 307 P.2d 222, and Meyers v. Matthews (1955) 270 Wis. 453, 71 N.W.2d 368, 54 A.L.R.2d 868.

■ Placing the collection business under the supervision of a state commission through a. Credit and Collection Board (§ 583), requiring evidence from the agency bearing upon its "reputation, integrity, competence and net worth" (§ 573, ¶ 4), requiring the agency to supply surety bond "to safeguard the interests of the public" (§ 574), establishing qualifications. for those proposing to engage in the business (§ 575), prohibiting practices which the legislature considered inimical to commercial and professional ethics (listed in § 576), requiring access to the agency's business records (§ 580), and providing means for the orderly liquidation of an agency in default of its claimants (§ 581), are eminently appropriate and reasonable means toward public assurance that persons handling other's claims are trustworthy, that collection procedures will be kept within commercially and legally acceptable bounds, and that claims by forwarders and creditors will be protected.

Plaintiff aims his criticism grounded upon constitutional prohibitions,[2] at Sections 571, 572, and 575 only. These prohibitions will be considered seriatim.

### Ex post facto issue

■ This statute is not an *ex post facto* law constitutionally prohibited. Such "(a) law is ex post facto (after the deed or fact,) when (1) it makes a criminal offense of what was innocent when done; or (2) it aggravates a crime, making it greater than it was when committed; or (3) it inflicts a punishment more severe than was prescribed at the time the crime was perpetrated; or (4) it alters the rules of evidence to the injury of the accused; or (5) it, in effect if not in purpose, deprives him of some protection to which he has become entitled. The· expression relates solely to crimes and their punishment, and has no application to civil matters." In re John M. Stanley, 133 Me. 91, 93, 174 A. 93, affirmed in Stanley v. Public Utilities Commission, 295 U.S. 76, 55 S.Ct. 628, 79 L.Ed. 1311. See also Hawker v. People of State of New York (1898) 170 U.S. 189, 196, 18 S.Ct. 573, 42 L.Ed. 1002; Meffert v. State Board of Medical Registration and Examination (1903) 66 Kan. 710, 72 P. 247, 251, 1 L.R. A.,N.S., 811 (bottom column 1); Page v. Watson (1938) 140 Fla. 536, 192 So. 205, [4] 210, 126 A.L.R. 249; McDonough v. Goodcell (1939) 13 Cal.2d 741, 91 P.2d 1035, [19, 20] 1041, 123 A.L.R. 1205; Frazier v. Goddard (D.C.Okl.1945) 63 F.Supp. 696, [4] 698; Konigsberg v. State Bar of California (1961) 366 U.S. 36, 81 S.Ct. 997, [9, 10] 1005, 6 L.Ed.2d 105; and Smith v. The State of California (9 CCA, 1964) 336 F.2d 530, [6] 534.

The rationale is expressed in *Hawker*, supra, a leading case, 170 U.S. at page 200, 18 S.Ct. on page 577, where the majority of the court said:

"The thought which runs through these cases and others of similar import which might be cited is that such legislation is not to be regarded as a mere imposition of additional penalty, but as prescribing the qualifications for the duties to be discharged and the position to be filled, and naming what is deemed to be, and what is in fact, appropriate evidence of such qualifications."

---

2. "Impairment of Contracts" and "ex post facto law" under U. S. Constitution, Article I, Section 10; Maine Constitution Article I, Section 11.
   "Due Process," "equal protection" and "unjust discrimination" under U. S. Constitution in Amendment XIV, Section 1; and Maine Constitution in Article I, Section 6–A.

*Impairment of Contract Issue*

This issue is raised only by the implication that on January 1, 1966 plaintiff had contractual relations with clients which the requirement of license, denied him, impaired. The record does not establish that such contracts in fact existed, but, if so, the law is not unconstitutionally defective in this respect. See In re Guilford Water Company (1919) 118 Me. 367, 372, 108 A. 446, where appears "(t)he rule is general that every contract touching matters within the police power must be held to have been entered into with the distinct understanding that the continuing supremacy of the state, if exerted for the common good and welfare, can modify the contract when and as the benefit of that interest properly may require." Also Baxter v. Waterville Sewerage District, 146 Me. 211, 218, 79 A.2d 585. This rule is reiterated and applied in American Budget Corp. v. Furman, 67 N.J.Super. 134, 170 A.2d 63, [9] 69, affirmed by the court of last resort (1961) 36 N.J. 129, 175 A.2d 622, against an attack on a statute in substance outlawing the business of debt adjusting.

The plaintiff, never having been licensed, can base no challenge of the statute upon the false premise that the relationship between the State and him, as a licentiate, is contractual, which contract the statute impairs. 33 Am.Jur., Licenses § 21, and see Hughes v. State Board of Medical Examiners (1926) 162 Ga. 246, 134 S.E. 42, [4] 47.

*"Due Process, "Equal Protection" and "Unjust Discrimination" Issues*

There is case law in abundance recording unsuccessful attacks founded upon these constitutional issues upon licensing statutes. The majority in number of these cases arose by reason of the complainant's license having been revoked on account of disqualifying conduct.

The minority in number have arisen by virtue of the licensing board's denial of license because of disqualifying conduct. We consider that the constitutional issues here raised have equal application to each situation. The constitutional validity of denying a license rests upon the same ground as the constitutional validity of revoking a previously granted license. In each case constitutional due process as to "hearing" is implicit.

The salient point of concern here is the statutory provision by which the disqualifying conduct is measured. Many cases turn upon disqualification expressed in general terms, the interpretation and application of which rests with the board of licensure.

*Revocations:* See as to medical doctors, "unprofessional conduct" (including by definition acts mala prohibitum or mala in se and mental incompetency) Hubbard v. Washington State Medical Disciplinary Board (1960) 55 Wash.2d 546, 348 P.2d 981; "gross immorality" Meffert v. State, supra (Kan.1903); "misconduct" Ladrey v. Commission on Licensure to Practice The Healing Art in The District of Columbia (1958) 104 U.S.App.D.C. 239, 261 F.2d 68; "conviction of crime involving moral turpitude" Hughes v. State Board of Medical Examiners (1926) 162 Ga. 246, 134 S.E. 42.

See as to dentists, "immoral or dishonorable conduct" South Carolina State Board of Dental Examiners v. Breeland (1946) 208 S.C. 469, 38 S.E.2d 644, 167 A.L.R. 221; "moral turpitude" Brun v. Lazzell (1937) 172 Md. 314, 191 A. 240, 109 A.L.R. 1453.

See as to osteopath, "Unprofessional and dishonorable conduct" (including by definition, drug addiction, knowingly making false documents in connection with practice) Rose v. State Board of Registration for the Healing Arts (Mo. 1965) 397 S.W.2d 570.

See as to druggists, "abuse of (professional) trust" Straight v. Crawford (1888) 73 Iowa 676, 35 N.W. 920.

See as to suspension of Attorney at Law, "commission of 'any act contrary to honesty, justice or good morals'" In re Morris (1965) 74 N.M. 679, 397 P.2d 475; as to disbarment for lack of "good moral character" Sanborn v. Kimball (1875) 64 Me. 140; and Ex parte Wall (1882) 107 U.S. 265, 2 S.Ct. 569, 27 L. Ed. 552.

*Denials of license:* Requirement that applicant be without "infirmity of body or mind," and "criminal record" to be considered Kaufman v. Taxicab Bureau, Baltimore City Police Department (1964 —Applicant for taxi license) 236 Md. 476, 204 A.2d 521; conviction of misdemeanor for dispensing drugs without prescription, Thomas v. Board of Pharmacy (1910—druggist) 152 N.C. 373, 67 S.E. 925; requirement of "good moral character" and fitness and propriety to engage in the proposed business, McDonough v. Goodcell (1939—bail bonding) 13 Cal.2d 741, 91 P.2d 1035, 123 A.L.R. 1205; requirement of "good moral character" and non-advocacy of violent overthrow of state or federal government, Konigsberg v. State Bar of California (1961—applicant for admission to bar) 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105.

Our statute differs from those involved in the cases just cited, in that the responsibility of the licensing board to determine quasi-judicially whether or not the alleged conduct falls within the statutory proscription is substantially obviated. By express terms of Section 575:

"No license shall be granted to an applicant * * * if such applicant * * *, has been convicted * * * of the crime of * * *, embezzlement, * * *, of which the record of conviction * * * shall be conclusive evidence."

This expression of disqualification is even more specific than that in those cases in which a license has been revoked for conviction of a "felony." Page v. Watson (1938—physician) 140 Fla. 536, 192 So. 205, 126 A.L.R. 249; United States v. Goodloe (D.C. of D.C.1964—physician) 228 F.Supp. 164; and conviction of a "crime" Munkley v. Hoyt et al. (1901—pharmacist) 179 Mass. 108, 60 N.E. 413. Of particular significance is the holding in DeVeau v. Braisted (1960) 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed. 2d 1109, in which the State of New York disqualified ex-felons from waterfront union offices, and in upholding the statute, plurality of the Court said in [3] at page 1154:

"Barring convicted felons from certain employments is a familiar legislative device to insure against corruption in specified, vital areas. Federal law has frequently and of old utilized this type of disqualification.[3] * * * State provi-

---

**3.** 5 U.S.C.A. Executive Departments and Government Officers and Employees: Persons convicted of stated offenses "prior to, on or after September 1, 1954" (effective date of the statute) disqualify for annuity or retirement pay, § 2282. 8 U.S.C.A. Aliens and Nationality: Loss of nationality upon conviction by marital court of desertion in time of war, or treason, inter alia, § 1484. 10 U.S.C.A. Armed Forces: No felon may be enlisted or mustered into the Army, § 3253, or Air Force, § 8253. 18 U.S.C.A. Crimes and Criminal Procedure: Numerous instances of disqualification from holding "any office of honor, trust, or profit under the United States" by virtue of officer or employee accepting bribe, § 202; same as to Members of Congress, Judicial Officers and Judges, §§ 205–207; same as to officer or Members of Congress for accepting pay for contract procurement, § 216; or where compensation is received for participating on behalf of interests in conflict with that of the United States, § 281; or practicing before a Court of claims, § 282; or any officer of the Armed Forces installing troops at any place of general or special election, § 592. Any collecting or disbursing officer of the United States trading in public property is disqualified for "holding any office under the United States", § 1901; same as to person concealing, removing, etc., public records, § 2071; same as to one owing allegiance to the United States who "adheres" to an enemy of the United States, § 2381. Whoever promotes insubordination etc., in the Armed Forces

sions disqualifying convicted felons from certain employments important to the public interest also have a long history. See, e. g., Hawker v. People of State of New York, 170 U.S. 189, 18 S.Ct. 573, 79 L.Ed. 1311, * * *. The question in each case (page 1155) where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession. See Hawker * * *."

Paraphrasing *DeVeau* from page 1155 of 80 S.Ct., "No doubt is justified regarding the legislative purpose" of the Maine statute. The law is "not to punish ex-felons, but to devise what was felt to be" appropriate regulation for an activity in the public interest. The rationale of *DeVeau* was later applied in Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435.

While in general we have equated the principle concerned in revocation of a license with those concerned in denial of a license, plaintiff urges that his "disqualification" occurred prior to the effective date of the licensing statute and that that is a fact of controlling significance, apart from its claimed *ex post facto nature*. Not so. The statute speaks in the present and only declares that past conduct is to be considered in determining present fitness for engagement in the proposed activity, a praesenti or in futuro. See under "denials of license" McDonough v. Goodcell (1939), 13 Cal.2d 741, 91 P.2d 1035, [19, 20] 1041, 123 A.L.R. 1205 and *Hawker*, supra, 170 U.S. at page 200, 18 S.Ct. 573, 42 L.Ed. 1002. An attack upon an "habitual crim-

inal" statute which was applied to a conviction occurring before the statute became effective, upon constitutional grounds, was summarily held to be without merit in State v. Chamineak (Mo.1941) 343 S.W.2d 153, [20] 163, and Lawrence v. Commonwealth (1965) 206 Va. 51, 141 S.E.2d 735, [1] 736. A challenge to a Federal Firearms Act which prohibited one previously convicted of a crime of violence to possess firearms was upheld in Cases v. U. S. (1 CCA, 1942) 131 F.2d 916, [5, 6] 921 where the Court said legality of present conduct may depend upon past behavior "even behavior before the passage of the regulatory act."

Attacks upon identical grounds by complainants who purport to engage in business involving the financial community have been no more successful. See American Budget Corp. v. Furman (1961—debt adjusting) 67 N.J.Super. 134, 170 A.2d 63, [9] 69, affirmed by Court of last resort (1961) 36 N.J. 129, 175 A.2d 622; Ferguson v. Skrupa (Kan.1963—debt adjusting) 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93; State ex rel. Clark v. Brown (1965—budget counseling) 1 Ohio St.2d 121, 205 N.E.2d 377; Hankins v. Spaulding (1957—collection agency) 78 Idaho 533, 307 P.2d 222.

■ Examination of the cases cited negatives the validity of plaintiff's constitutional contentions, including that which labels our statute as "unjustly discriminating." In this respect the principles reviewed in Associated Hospital Service of Maine v. Mahoney et al., 161 Me. 391, 409, 213 A.2d 712, apply and support the "collection agency" classification as valid.

Our statute is valid, and injunctive relief is denied.

So ordered.

---

is disqualified for employment by the United States for a period of 5 years, § 2387.
28 U.S.C.A. Judiciary: Convicted felons inter alia disqualified for federal jury service, § 1861.

38 U.S.C.A. Veterans Benefits: Anyone convicted of subversive activity is disqualified for veterans benefits, § 3505.