CHARLES C. HAUS, JAMES V. ECKERT AND GARY TOTH, PLAIN-
TIFFS–APPELLANTS, v. MAYOR AND COUNCIL OF THE BOR-
OUGH OF SOUTH PLAINFIELD, DEFENDANT–RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Submitted November 6, 1989—Decided January 10, 1990.

Before Judges J.H. COLEMAN, BRODY and MUIR, Jr.

*Sanford E. Chernin,* attorney for appellants.

*Johnstone, Skok, Loughlin & Lane,* attorneys for respondent (*William V. Lane,* of counsel; *Robert A. Kopnicki,* on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

This appeal requires us to interpret that portion of *N.J.S.A.* 40A:9–165 which protects a municipal tax assessor, municipal tax collector and municipal clerk (protected officers) from being denied "without good cause an increase in salary given to all other municipal officers and employees...." In the only reported opinion on the subject, Judge Rimm found that the statute protected a municipal tax assessor whom the governing body obviously had singled out for a token raise as a political reprisal. *Mun. Assessors of N.J. v. Mullica Tp.,* 225 *N.J.Super.* 475 (Law Div.1988). Here, aside from the alleged disparity in salary increases, there is no evidence that the protected officers were the object of political reprisal. Also, the reported opinion does not offer guidance for deciding whether a salary increase given protected officers satisfies the statute.

Plaintiffs are protected officers. Charles Haus is the South Plainfield tax collector, James Eckert is the borough clerk, and Gary Toth is the borough tax assessor. In this action in lieu of prerogative writs, plaintiffs demand judgment invalidating the Borough's 1986, 1987 and 1988 salary ordinances because their raises for those years were allegedly less than raises generally given other Borough officers and employees. The trial judge, relying largely on the presumption of validity that attaches to ordinances, *Reingold v. Harper,* 6 *N.J.* 182, 196–197 (1951), granted the Borough summary judgment respecting these

claims. We conclude that matters of fact and opinion need to be established before these claims can be adjudicated.

## I.

We will first discuss an unrelated claim raised by the borough clerk. By a resolution adopted in February 1986, the governing body appointed him to the additional office of borough administrator "for the year 1986." The governing body removed him from that office by a resolution adopted January 12, 1987. The clerk demands back pay and reinstatement to the office of administrator because the resolution removing him neither gave him three months' notice of his removal nor alternatively provided that he be paid his salary for three months following his removal as required by statute. The trial judge refused to order reinstatement but directed the Borough to pay the clerk his salary through April 12, 1987, three months after he was removed. We affirm that determination.

A municipal administrator serves "at the pleasure of the governing body," *N.J.S.A.* 40A:9–137, but may be removed only by at least a ⅔ vote. *N.J.S.A.* 40A:9–138 provides:

> The municipal administrator may be removed by a ⅔ vote of the governing body. The resolution of removal shall become effective 3 months after its adoption by the governing body. The governing body may provide that the resolution shall have immediate effect; provided, however, that the governing body shall cause to be paid to the administrator forthwith any unpaid balance of his salary and his salary for the next 3 calendar months following adoption of the resolution.

Here the governing body apparently believed that by limiting the original appointment to "the year 1986," the same resolution by which he was appointed administrator gave the clerk more than three months' notice that he would be removed at the end of the year. However, the Borough does not advance that argument in this action. Rather, it contends that the removal was lawful because the resolution of removal was adopted by a ⅔ vote of the governing body. We agree.

The statutory requirement that when the removal is immediate "the governing body shall cause to be paid ... his salary

for the next 3 months following adoption of the resolution" does not mean that the removal is invalidated if the resolution does not authorize payment of the additional salary. Nor is the removal later invalidated if the governing body does not cause the salary to be paid forthwith. The statute merely gives a former administrator a claim for payment of three months' salary following his immediate removal. *Cf. Cabarle v. Governing Body of Tp. of Pemberton*, 167 *N.J.Super.* 129 (Law Div.1979), aff'd o.b. 171 *N.J.Super.* 586 (App.Div.1980) (removal not lawful because resolution of removal did not receive a ⅔ vote of the governing body).

## II.

■ As one of several measures intended to enhance professionalism in the offices of municipal tax assessor, tax collector and municipal clerk, the Legislature amended *N.J.S.A.* 40A:9–165, which authorizes municipalities to determine salaries of its officers and employees by ordinance, to add the following:

> No such ordinance shall reduce the salary of, or deny without good cause an increase in salary given to all other municipal officers and employees to, any tax assessor, tax collector or municipal clerk during the term for which he shall have been appointed. [*L.* 1981, *c.* 393, § 28.]

The amendment was intended to protect these officers from economic discrimination regardless of whether it is politically motivated. In a close case, however, evidence of political reprisal may make it easier to establish economic discrimination.

Although the legislative objective is clear, it is not clear from the language of the statute precisely how that objective is to be attained. The Borough emphasizes the word "all" in the statute. It argues that unless a protected officer can demonstrate that his salary increase is less than the increase "given to *all* other municipal officers and employees," the court must find that the Borough has complied with the statute. Such an interpretation would give a protected officer little economic

protection. He would be assured of no greater salary increase than that given a newly hired clerk or laborer.

Plaintiffs, on the other hand, emphasize the word "generally" that appears in the legislative statement attached to the amendment. The relevant portion of the statement describes the amendment as follows:

> Amends N.J.S. 40:9–165 to provide that salary increases provided generally to municipal officers and employees shall be provided to the tax assessor, tax collector and municipal clerk unless good cause can be provided for denying the increase; ...

Plaintiffs argue that taking into account the salary increases "generally" given other municipal officers and employees, logically requires giving the protected officers at least the arithmetic average of the increases given all other officers and employees. Giving the protected officers salary increases equal to the average increase given all other officers and employees, however, would ignore the likelihood that many officers and employees, either individually or as particular classes, may for good reasons have received an unusually large or unusually small salary increase in the year being considered.

There is no simple formula that will satisfy the legislative lodestar of protecting these three officers from economic discrimination when the governing body fixes the salary increases of municipal officers and employees. If every officer and employee received the same salary and all but a protected officer were given the same salary increase, one could easily interpret the statute to require that the protected officer be given the same increase given all others. The example, of course, is absurdly unrealistic. There will be those whose salary increase bears a close relationship to the increase that should be given a protected officer to avoid economic discrimination, such as another officer with similar experience, skills and responsibilities who has been drawn from an equally accessible labor market. On the other hand, there will be those whose salary increase bears only a remote relationship to the increase that should be given a protected officer to avoid

economic discrimination, such as an employee with dissimilar experience, skills and responsibilities who has been drawn from a more or a less readily accessible labor market.

The statute accommodates the realities of the labor market and labor relations by permitting governing bodies to justify a departure from any rigid formula for "good cause." The proper statutory balance is struck by treating a particular claim as one would generally treat an employment discrimination claim. *See Peper v. Princeton University Board of Trustees*, 77 *N.J.* 55, 80–83 (1978) (although employee bore ultimate burden of proof, once she presented *prima facie* evidence of sex discrimination, burden shifted to employer to come forward with legitimate nondiscriminatory reason for its failure to promote her). *See also McDonnell–Douglas Corporation v. Green*, 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.*2d 668 (1973).

■ A protected officer who claims to be aggrieved by an inadequate salary increase must make a threshold showing that generally other officers and employees were given increases that exceed his. If the officer makes that showing, the municipality must present evidence demonstrating "good cause" for the disparity. That means not only validating the economic basis for the disparity but justifying it in light of the legislative policy to afford economic protection to the holders of these offices. That effort may require the use of expert opinion as to the economic features of the disparity. In view of the presumptive validity of ordinances, the aggrieved officer ultimately must bear the burden of persuasion that there is no good reason for the disparity either economically or when measured against the protective objectives of the statute.

■ The present record is inadequate for a determination of the factual and opinion issues that must be resolved. In an effort to have the matter decided summarily, the parties presented the court with an undigested plethora of ordinances, ledger sheets, and labor contracts. The respective attorneys have drawn conflicting and sometimes inconsistent general

conclusions as to whether there are disparities between the salary increases given plaintiffs and the increases given others. Although we gather from the argument below that depositions were taken, the parties have not furnished us with transcripts. As they are described in the record, however, we doubt that the depositions would resolve the issues raised.

The only testimonial evidence we have been given is an affidavit by the Mayor in which he attempts to justify certain disparities in the salary increases. It reads in pertinent part:

> It is my understanding that *N.J.S.A.* 40A:9-165, the statute on which the Plaintiffs rely in their complaint, does not support the Plaintiffs' claim. However, if that statute is held by the Court to be at all germane to this action, I wish to note that there was good cause for any disparity in salary between Plaintiffs and other Borough officers and employees. In specific, the salaries of members of the Police Department and Department of Public Works employees were achieved through collective bargaining with their respective unions. Similarly, the Borough Engineer's compensation also was separately negotiated. The Construction Code Official's 1987 raise included a one-time bonus relating to his pending retirement. Thus, I respectfully submit that there was good cause for any difference in salary levels alleged by the Plaintiffs.

On the present record, the fact that members of the police and public works departments are better able than plaintiffs to advance their economic interests because they are unionized is not good cause for a significant disparity in salary increases. The Mayor's statement may provide a valid economic reason for those larger salary increases, but that reason does not serve the statutory policy of protecting the economic interests of officers such as plaintiffs who typically are not unionized when employed in the public sector.

### III.

We do not pass on the Borough's *R.* 4:69-6 limitations defense as to the 1986 salary ordinance or whether the Borough waived the defense by not having raised it in its answer. The Borough first raised the defense at oral argument on the motion for summary judgment, but the trial judge did not treat it in his opinion. The Borough is free to attempt to raise the issue by moving to amend its answer.

Remanded for further proceedings consistent with this opinion.