*See also Samuel Kirshbaum Fabrics Corp. v. L. & G. Green-field, Inc.,* 80 *N.Y.S.*2d 443 (Sup.Ct.1948).

The judgment confirming the arbitration award as modified is reversed and the award is vacated.

619 A.2d 1042

ASSOCIATION OF MUNICIPAL ASSESSORS OF NEW JERSEY, A CORPORATION NOT FOR PROFIT, AND DEBORAH A. SPETTEL, PLAINTIFFS, v. TOWNSHIP OF BARNEGAT AND MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF BARNEGAT, DEFENDANTS.

Superior Court of New Jersey
Law Division Ocean County

Decided September 30, 1992.

*Harry Haushalter* for plaintiffs (*Conley & Haushalter*, attorneys).

*Thomas G. Gannon* for defendants (*Hiering, Hoffman & Gannon*, attorneys).

RIMM, J.T.C. (temporarily assigned).

This is essentially a suit by plaintiff, Deborah A. Spettel, assessor of defendant, Township of Barnegat, for relief under *N.J.S.A.* 40A:9–165, the "statute," based on her allegations that she has been denied "without good cause an increase in salary given to all other municipal officers and employees." She will hereafter be referred to as "plaintiff." Plaintiff, Association of Municipal Assessors of New Jersey, is a not-for-profit organization composed of New Jersey assessors and organized for the improvement and advancement of the professionalism of its members.

Plaintiff is a certified tax assessor who has been the tax assessor of Barnegat Township for the past 17 years. She is a member of the Association. Defendant, Township of Barnegat, is a municipal corporation of the State of New Jersey in Ocean County. It will hereafter be referred to as "defendant." De-

fendants, Mayor and Township Committee of the Township of Barnegat, constitute the governing body of defendant township.

By Resolution 1990–218, adopted on June 4, 1990, defendant established the salaries of specific municipal employees, including the tax assessor. The salary of the tax assessor was established at $30,685.94 for the year 1990. By Resolution 1991–239, adopted on June 19, 1991, defendant township established the salaries of specific municipal employees, including the tax assessor. The salary of the tax assessor was established at $32,066.81 for the year 1991. This salary constituted an increase of 4.5% over the salary for the assessor for 1990. The resolution providing for this increase refers to 11 "department heads" and includes the municipal clerk, the deputy clerk, the chief financial officer, the tax assessor, the tax collector, the court clerk, the recreation director, the zoning officer, the public works supervisor, the water and sewer supervisor and the water and sewer collector. There is actually a twelfth employee listed in the resolution, namely the chief of police, but, during the trial, the parties agreed that the resolution does not in fact cover him because he is the subject of a collective bargaining agreement with the Senior Officers Association.

By Resolution 1990–456, adopted on December 17, 1990, defendant established the salaries of specific municipal employees by way of the approval of a collective bargaining agreement with the Office and Professional Employees International Union, Local 14, AFL–CIO–CLC, for the years 1990 and 1991. The Resolution, and the collective bargaining agreement to which it refers, involves defendant's "white collar employees." The agreement specifically provides that for the year 1991 each full-time employee and each part-time employee covered by the agreement shall receive an increase in wages of 6% over the employee's 1990 salary or wages, as the case may be.

By Resolution 1990–457, adopted on December 17, 1990, defendant established the salaries of specific municipal employ-

ees by way of the approval of a collective bargaining agreement with Teamsters Local No. 35, affiliated with the I.B.T.C.W. & H. of America and the Eastern Conference of Teamsters for the years 1990 and 1991. The Resolution, and the collective bargaining agreement to which it refers, involves defendant's "blue collar employees." The agreement specifically provides that for the year 1991 each full-time employee and each part-time employee covered by the agreement shall receive an increase in wages of 6% over the employee's 1990 salary or wages, as the case may be.

Certain other employees were also given increases in their 1991 salaries over their 1990 salaries. Some time after July, 1991 and after the adoption of Ordinance 1991–239, fixing the salary of the assessor and providing for an increase for her and certain other employees of 4½ over their 1990 salary, the municipality entered into two agreements with employees of the police department. One contract was with the Patrolmen's Benevolent Association, the union representing patrolmen. The other contract was with the Senior Officers' Association, the union representing other uniformed employees of the police department. Both contracts provided for increases in salary for 1991 of 5% over 1990.

Based on the four resolutions, plaintiff claims that the municipality has violated the provisions of the statute and that she is entitled to an increase in her salary for 1991 of 6% over her 1990 salary instead of an increase of 4½. The statute in pertinent part reads as follows:

> Salaries, wages or compensation fixed and determined by ordinance may, from time to time, be increased, decreased or altered by ordinance. No such ordinance shall reduce the salary of, or deny without good cause an increase in salary given to all other municipal officers and employees to, any tax assessor, chief financial officer, tax collector or municipal clerk during the term for which he shall have been appointed. [*N.J.S.A.* 40A.9–165.] [1]

---

[1] The statute was amended effective August 25, 1991 to add the chief financial officer as a protected employee. This amendment was effective after

Two reported cases have interpreted this statutory provision. The first is *Municipal Assessors of N.J. v. Mullica Tp.*, 225 *N.J.Super.* 475, 542 *A.*2d 970 (Law Div.1988). In that case, a salary ordinance was used in an attempt to control an assessor's performance, and the court said that such use was the very thing the statute sought to avoid. In that case, the court found that there was not good cause for refusing the assessor a larger increase than he received and entered judgment that the assessor was entitled to an increase in his salary commensurate with increases given to other municipal employees. The result reached in that case was, as indicated, essentially based on the fact that the municipality was using its salary ordinance, and its refusal to give the assessor a commensurate increase in his salary, as a tool for controlling the assessor in the performance of his duties. No such contention is made in the present case, and I find as a fact that, in the present case, the amount of the increase of 4½ given to the assessor, as opposed to the amount of the increase she is seeking, namely 6%, was not related to any attempt to control the assessor in the performance of her duties nor in the operation of the assessor's office.

The second case which has thus far interpreted the statute is *Haus v. Mayor and Council of South Plainfield*, 237 *N.J.Super.* 558, 568 *A.*2d 569 (App.Div.1990). In that case, there was no evidence that the protected officers were the object of political reprisal or an attempt to control their offices. The court then went on to deal with the manner in which such a matter should proceed at trial and the substantive issues to be considered in determining whether or not there has been a violation of the statute.

The *Haus* case held that a protected officer who claims that there was a violation of the statute must make a threshold showing that generally other officers and employees

---

the filing of the complaint in this matter on August 2, 1991 and is noted for the record.

were given increases that exceeded his. If such a showing is made, the municipality must then present evidence demonstrating "good cause" for the differences in the salaries. Ultimately, the employee claiming a violation of the statute bears the burden of persuasion that there is no good reason for the disparity, because there is a presumption of validity of municipal ordinances.

In this case, the threshold showing of disparity was made, and the municipality went forward under the statute and the *Haus* case and presented evidence which it claimed showed good cause justifying the disparity.

The evidence adduced on behalf of the municipality to show good cause relates to several items. First, the municipality claims that budgetary constraints and statutory limitations relating to a cap on budget increases from one year to another limit its ability to pay the department heads more than an increase of 4½ for 1991 over 1990. The evidence before the court is that the two contracts with the white collar workers and the blue collar workers were consummated at the end of 1990. The ordinance providing for the increase given to the department heads, including plaintiff assessor in this matter, was adopted in 1991. At that time, the municipality claims it had additional knowledge concerning its budgetary burdens and the limitations placed on it by the statutory provisions limiting increases in the budget from one year to another.

The argument concerning budget limitations is strenuously urged by the municipality upon the court. However, it must be rejected. As counsel for plaintiff has appropriately argued on this point, budget constraints and budget considerations cannot be good cause for a disparity between one employee and another, in the absence of other factors. As presented by defendant in this matter, budgetary constraints could justify any disparity among employees. A municipality could argue that it chose to give one employee, or a certain group of employees, a certain increase of salary from one year to anoth-

er, but that it could not give other employees the same increase because it did not have sufficient funds in its budget or because of constraints imposed by statutory provisions. There is no basis in the statute being considered in this case for using budget limitations or statutory constraints to discriminate among employees. Budgetary constraints and statutory limitations relating to a cap on budget increases from one year to another cannot preclude increases to the employees protected by the statute if other municipal employees receive increases.

■ The municipality argues, secondly, that the assessor has, in addition to her base salary, additional payments for longevity of service. Her longevity payments increased by 1%, from 1990 to 1991. However, the evidence before the court is that the municipality provides for longevity payments to all employees; the longevity payment formula applies equally to all employees; and all employees, depending on their length of employment by the municipality, receive the same longevity benefits. Accordingly, longevity payments are not a good cause under the statute for disparity among employees in their base salaries. The same is true of the municipality's argument concerning benefits afforded to the assessor. All full-time employees are basically afforded the same benefits, no matter what the nature of their work is.

■ The municipality next argues that, with regard to the Patrolmen's Benevolent Association and Senior Officers' Association, they were faced with the prospect of arbitration. In view of that prospect, they negotiated a 5% increase with both of these unions. The final agreements with the unions were reached some time after July, 1991, with the contracts to be retroactive to January 1, 1991. The contracts resulted in 5% increases for both patrolmen and superior officers for 1991 over 1990. The municipality argues that, since the patrolmen and the superior officers were unionized, the municipality faced the possibility of an even greater increase for 1991 over 1990

than 5%, and accordingly, the municipality settled with these unions for an increase of 5%.

This argument must also be rejected in this matter. In the first place, by making such an argument, the municipality contradicts its own contention that it was limited to a 4½% pay increase for the assessor and other similarly situated officers because of budgetary constraints. In the second place, the rejection is based on the *Haus* case. In that case, the municipality argued that there was good cause for the disparity between the increase in pay to the protected officers and the increase in pay to other employees of the municipality. The salaries of most of the other employees were achieved through collective bargaining with their respective unions. The court, in response to the argument, said that:

> On the present record, the fact that members of the police and public works departments are better able than plaintiffs to advance their economic interests because they are unionized is not good cause for a significant disparity in salary increases. The Mayor's statement may provide a valid economic reason for those larger salary increases, but that reason does not serve the statutory policy of protecting the economic interests of officers such as plaintiffs who typically are not unionized when employed in the public sector. [237 *N.J.Super.* at 565, 568 *A.2d* 569.]

While the fact that certain employees are represented by a union may be a valid economic reason for larger salary increases to the unionized employees, one of the purposes of the statute is to recognize that the protected officers are not usually unionized.

In *Haus*, the Court held that the statute was intended to protect the tax assessor, the tax collector and the municipal clerk from economic discrimination. In concluding that there was no simple formula that will satisfy the legislative purpose of protecting these officers from economic discrimination, the Court focused on "matters of fact and opinion" relating to the "similar experience, skills and responsibilities" of employees "drawn from an equally accessible labor market". In order to show "good cause" for a disparity between the salary or wage increases given other employees and those given the protected

officers, a municipality must validate the economic basis for the disparity *and* justify it in the face of the legislative intent to give economic protection to the protected officers. *Haus v. Mayor and City Council of South Plainfield, supra* at 563, 564, 568 *A*.2d 569.

There are no facts nor is there any opinion evidence in the present case showing good cause for the disparity between the increase given the assessor and the increase given the other employees. In presenting its defense to plaintiff's claim, the municipality did deal with budgetary constraints, longevity, employee benefits and the unionization of certain of its employees. As indicated, none of these items justify the disparity in this case. However, the municipality failed to deal with the items of similar experience, skills, responsibilities and the accessable labor market, as mandated by *Haus*, to justify the disparity. Nor did the municipality deal with any factors relating to the assessor's salary itself which would justify not increasing an assessor's salary in a subsequent year when the salaries of other employees are increased as suggested in *Municipal Assessors of N.J. v. Mullica Tp., supra* at 483, 542 *A*.2d 970.

■ The economic protection sought to be provided by the statute will be realized in this case by ordering a total increase in the assessor's 1991 salary of 6% over her 1990 salary. This result is based on the increases given the blue collar and white collar workers. The Legislature intended to afford protection to employees holding the sensitive public offices described in the statute, to which offices was added that of chief financial officer by the 1991 amendment to the statute. In the absence of evidence from the municipality justifying the disparity between the assessor's increase and the increase given the blue collar and white collar workers, I conclude that the assessor's employment is at least as sensitive, and as important to the municipality, as the employment of those workers.

Judgment will be entered in accordance with this opinion. Counsel for the plaintiff will submit such a judgment under *R.* 4:42–1(c).